(69 South. 273)

Nos. 21021, 21107.

CITY OF NEW ORLEANS v. RICKER.

CITY OF NEW ORLEANS v. BECK.

(April 12, 1915. Rehearing Granted June 7, 1915. Decree by Consent July 31, 1915.)

*(Syllabus by the Court.)*

1. CRIMINAL LAW ☞1090—APPEAL—PRESENTATION FOR REVIEW—EVIDENCE.

On appeal in a criminal case, evidence found in the transcript, but not coming up as a part of a bill of exception, will not be noticed.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2653, 2739, 2803–2822, 2825–2827, 2927, 2928, 2948, 3204; Dec. Dig. ☞1090.]

2. HEALTH ☞21—MUNICIPAL CORPORATIONS ☞122—ORDINANCE — VALIDITY—PRESUMPTION.

A demurrer to an affidavit based on an ordinance of the board of health of the city of New Orleans, on the ground that the same is illegal and unconstitutional, must be tried on the face of the ordinance. *Held,* that the ordinance of the board of health of the city of New Orleans providing for the rat-proofing of all houses, buildings, superstructures, etc., in said city, for the purpose of suppressing and eradicating the bubonic plague, is a valid and constitutional exercise of the police power of the state, in the interest of the safety of the people. Every possible presumption is in favor of the validity of such an ordinance, until the contrary be shown beyond a reasonable doubt.

[Ed. Note.—For other cases, see Health, Cent. Dig. § 25; Dec. Dig. ☞21; Municipal Corporations, Cent. Dig. §§ 281–289; Dec. Dig. ☞122.]

3. MUNICIPAL CORPORATIONS ☞63—EXISTENCE OF PLAGUE—ORDINANCE.

Whether the existence of bubonic plague in the city of New Orleans involved such a danger to the public health as to require the rat-proofing of all buildings and structures in said city was one of fact and of public policy which belongs to the legislative department of the government.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 155, 1378, 1879; Dec. Dig. ☞63.]

Appeal from Recorder's Court of New Orleans; J. J. Fogarty and Ben P. Tiller, Recorders.

F. Ricker and Fred Beck were convicted of violating ordinances of the City of New Orleans, and appeal. Affirmed.

Dart, Kernan & Dart, of New Orleans, for appellants. W. L. Hughes, of New Orleans, for appellee.

LAND, J. These two cases involve the legality and constitutionality of a certain ordinance passed by the board of health of the city of New Orleans, known as the rat-proofing ordinances, for the purpose of suppressing and eradicating the bubonic plague.

Ricker was prosecuted on affidavit "for failing to have grocery and stable rat-proofed," and Beck was prosecuted "for failing to have grocery store rat-proofed," in violation of said ordinances.

The defendants were tried separately before different courts, and were convicted and sentenced. Both appealed to this court, and by consent of counsel the two appeals will be considered together.

Under article 85 of the Constitution, our jurisdiction is restricted to the question of the constitutionality or legality of the fine imposed on the defendants.

The ordinance applicable to this case is Ordinance No. 17, Board of Health Series, as amended by Ordinance No. 21, "to better protect the public health, and particularly to prevent the introduction and spread of bubonic plague, by providing for the rat-

proofing of all premises and buildings in the city of New Orleans." A copy of said ordinance is hereto attached for reference.

An Ordinance Defining Rat-Proof Buildings.

Board of Health for the Parish of Orleans and the City of New Orleans.

Ordinance No. 17, Board of Health Series, adopted July 25, 1914, as amended by Ordinance No. 21, Board of Health Series, adopted Sept. 8, 1914:

An ordinance to better protect the public health, and particularly to prevent the introduction and spread of bubonic plague, by providing for the rat-proofing of all premises and buildings in the City of New Orleans.

Section 1. Be it ordained by the board of health for the parish of Orleans and the city of New Orleans, that from and after the promulgation of this ordinance, that every building, outhouse and other superstructure now erected, or hereafter to be erected, in the city of New Orleans, shall be rat-proofed in the manner hereinafter provided for.

Sec. 2. Be it further ordained, etc., that it shall be unlawful for any person, firm or corporation to have or maintain, or hereafter to construct, any building, outhouse, or other superstructure, or any lot, open area, or other premise within the city of New Orleans, unless the same shall be rat-proofed in the manner hereinafter provided for.

Sec. 3. (As amended by Ordinance No. 21, Board of Health Series.) Be it further ordained, etc., that for the purpose of rat-proofing all buildings, outhouses and other superstructures in the city of New Orleans, except stables, shall be divided into two classes, to wit: Class A and class B; and the same shall be rat-proofed in the manner following, to wit:

Class "A"—All buildings, outhouses and other superstructures of class A shall have floors made of concrete, which concrete shall not be less than three (3) inches thick, and overlaid with a top dressing of cement, mosaic tiling, or other impermeable material, laid in cement mortar, and such floor shall rest without any intervening space between, upon the ground, or upon filling to be approved by the health officer of the city of New Orleans; said floor shall extend, and be hermetically sealed, to walls surrounding said floor, which walls shall be made of concrete, stone or brick, laid in cement and mortar, and each wall to be not less than six (6) inches thick, and shall extend into and below the surface of the surrounding ground at least two (2) feet, and shall extend not less than (1) foot above the surface of said floor; provided, that in certain cases, and after written permission shall have been obtained therefor from, and in a manner to be approved by the health officer of the city of New Orleans, wooden floors and wooden removable gratings may be laid upon such con-

crete floors; and in certain cases, after such written permission shall have been first obtained from the health officer of the city of New Orleans, tar-cinder composition flooring, as hereinafter defined and provided for, may be substituted for such concrete floors. That tar-cinder flooring hereinabove provided for, is hereby defined to be a composition of cinders and coal tar only, and, when laid, to be covered by a wooden floor.

The cinders used in the composition shall be free of soft ash and clinkers and shall be brought to the work dry.

The coal tar used in the composition shall be the product of the dry distillation of coal, and shall contain not more than two (2) per cent. of water, and shall be free from any mixture with other substance or thing.

The composition of, and manner of laying, tar-cinder composition flooring shall be as follows:

To each cubic yard of such cinders shall be added twenty gallons of such coal tar, the whole to be thoroughly mixed on the work where the same is to be laid, and no other substance or thing to be added thereto. This composition shall be laid between the walls hereinabove provided for in rat-proofing buildings of class "A," and cover the whole space to be floored, and the whole to be thoroughly tamped or rolled, as provided for hereinafter. The sleepers to be used in the laying of such flooring shall be creosoted by having the creosote pressed into each sleeper, under a pressure of not less than fifteen pounds to the square foot, and such sleepers shall be laid in such composition before the whole of said composition is rolled or tamped, and provided further, that after such sleepers are laid in such composition, and after the whole shall be so rolled and tamped, the whole shall be not less than four inches (4″) thick in its thinnest part. Upon this composition and sleepers, shall be laid a wooden flooring of the quality now provided, or hereafter to be provided for in the building laws of the city of New Orleans, provided, however, that for the purpose of laying a tar-cinder composition floor, said wooden flooring shall be tongue and groove, well fitted, and the planks firmly set into each other, and the whole, in such manner, as to prevent the ingress or egress of rats.

Class "B"—All buildings, outhouses and other superstructures of class B shall be set upon pillars or underpinning of concrete, stone or brick, laid in cement mortar, such pillars, or underpinning to be not less than eighteen (18) inches high, the height to be measured from the ground level to the top of said pillars or underpinning; and the intervening space between said building and the ground level to be open on three (3) sides, and to be free from all rubbish and other rat-harboring material: Provided that any building of class "B," used exclusively for residential purposes, may be made rat-proof by constructing at the margin of the ground area of said building a

wall of concrete or brick or stone laid in cement; such wall to extend into and below the surface of the ground at least two feet and to meet the floor of the building above closely and without any intervening space, such walls shall be at least six inches (6″) thick and extend entirely around said building, provided that said walls may be built with openings therein for ventilation only, and provided further, that such openings for ventilation shall be securely screened with metallic gratings having openings between said gratings of not more than one-half inch, and the whole so constructed and closed as to prevent the entrance of rats beneath such building.

Sec. 4. Be it further ordained, etc., that every slaughterhouse, abattoir, market (public and private), bakery, sausage factory, rendering plant, candy factory, ice cream manufactory, hotel kitchen, restaurant kitchen, grain elevator, warehouse where grain or cereals are stored, milk depot where milk is received or stored for distribution or sales, or where milk is converted into cream cheese or other products, dairy, building wherein poultry, game, animals or birds are stored or kept for sale, or sold, produce and commission houses, hide stores and other buildings wherein foodstuffs are manufactured and prepared, shall be rat-proofed in the manner provided for hereinabove as class "A." All other buildings, residences, outhouses and superstructures, except stables, not hereinabove specified as class A, shall be rat-proofed in the manner provided hereinabove as class B: Provided that in plague-infected areas, or where, from any cause, a building or outhouse or other superstructure is or may become, in his opinion, a menace or dangerous to public health, the health officer of the city of New Orleans may require any such building, outhouse or other superstructure, hereinabove required to be rat-proofed as a building of class B, to be rat-proofed as a building of class A; provided that the owner of any building, residence or superstructure in class B may rat-proof same as provided in class A if he so elects.

Stables—All buildings now, or hereafter to be constructed and used for stabling horses, mules, cows and other animals, shall be constructed as follows:

Walls—The walls of such building shall be constructed of concrete, brick or stone, laid in cement mortar, and shall be not less than six (6) inches thick, and shall extend into and below the surface of the surrounding ground not less than two (2) feet, and shall extend above the ground a sufficient height as to be not less than one (1) foot above the floor level. All openings in such foundation walls shall be covered with metal grating having openings not greater than one-half (1-2) inch between the gratings.

Floors—The floors of stables and stalls shall be of concrete not less than three (3) inches thick, upon which shall be laid a dressing not less than one-half (1-2) inch thick of cement or stone, laid in cement mortar, in such way as to prevent ingress or egress of rats, and such floors to have a slope of one-eighth (1-8) inch per foot to the gutter drains hereinafter provided for.

Stalls—The floors of stalls may be of planking, fitting either tightly to the concrete floor, or elevated not more than one-half (1-2) inch from the stall floor, and so constructed as to be easily removable. Such removable planking shall be raised at least once a week and the said planking and the concrete floor beneath thoroughly cleansed.

Gutters—Semi-circular or V-shaped gutter drains shall be constructed in such stables in such manner that a gutter shall be placed so as to receive all liquid matter from each stall, and each of these gutters to connect with the public sewer or with a main gutter of the same construction, which, in turn, shall be connected with the public sewer. All openings from drains into sewers shall be protected by a metal grating having openings not more than one-half (1-2) inch between the gratings.

Manure Pit—Each stable shall be provided with a manure pit to be sunk into the ground within or near to said stable which pit shall be lined with cement so as to make same liquid tight, and having a capacity of at least two and one-half cubic feet for each stall in said stable. Said manure pit shall be provided with a tight fitted cover, divided into two parts, and so constructed as to render the contents of said pit inaccessible to flies.

Manure—Any manure in and about all stables shall be placed in said manure pit at least once a day. Manure shall be removed from said pit at least twice a week between March 15th and December 1st, and at least once a week between December 1st and March 15th. All manure so removed shall be placed in wagons so protected as to render said manure inaccessible to flies.

Mangers—Each manger shall be constructed so as to have a slope of two (2) inches towards the bottom, shall be covered with tin or zinc and shall be at least eighteen (18) inches deep to avoid spilling of food.

Feed Bins—All feed bins shall be constructed of cement, stone, metal or wood, and with close-fitting doors. If constructed of wood the bins shall be lined or covered with metal, and the whole so constructed as to prevent the ingress or egress of rats. All grain, malt and other animal food, except hay, stored or kept in any stable must be kept in such feed bins. Said feed bins must be kept closed at all times except when momentarily opened to take food therefrom, or when same are being filled. No feed shall be scattered about such bin or stable and all such feed found on the floor or in the stalls of said stables shall be removed daily and placed in the manure pits. No foodstuffs intended for or susceptible of human consumption shall be kept or stored in any stable or any other place where animals are kept.

Sec. 5. Be it further ordained, etc., that

the construction and materials used in rat-proofing shall conform to the building ordinances of the city of New Orleans, except and only in so far as the same may be modified herein.

Sec. 6. Be it further ordained, etc., that all wall space, accidental and unnecessary spaces and holes, ventilators and other openings other than doors and windows in every building, outhouse and other superstructure in the city of New Orleans shall be closed with cement or screened with wire having not more than one-half (1-2) inch mesh, as the case may require, in such manner as to prevent the ingress or egress of rats: Provided that in all buildings, outhouses and other superstructures of class "A," and in all stables, where there are any spaces in walls between the wall proper and the covering on same, or in ceilings, between the ceiling and floor, or other ceiling covering above said spaces shall be eliminated by the removal of said covering, or so closed as to prevent the ingress or egress of rats, and the whole, as determined and in such manner as shall be approved by the health officer of the city of New Orleans.

Sec. 7. Be it further ordained, etc., that all premises, improved and unimproved, in the city of New Orleans, and all open lots and areas, shall be kept clean and free from all rubbish and similar loose material that might serve as a harborage for rats, and all lumber, boxes, barrels, loose iron and similar material that may be permitted to remain on such premises, and that may be used as a harborage by rats, shall be placed on supports and elevated not less than two (2) feet from the ground, with a clear intervening space beneath to prevent the harboring of rats.

Sec. 8. Be it further ordained, etc., that all planking and plank walks on and in yards, alleys, alleyways, or other open areas, shall be removed and replaced with concrete, brick or stone, laid in cement, gravel or cinders, or the ground left bare.

Sec. 9. Be it further ordained, etc., that all rat-proofing done under the provisions of this ordinance shall be approved by the health officer of the city of New Orleans.

Sec. 10. Be it further ordained, etc., that it shall be the duty of every owner, agent and occupant of each premise in the city of New Orleans to comply with all the provisions of this ordinance.

Sec. 11. Be it further ordained, etc., that each day's violation of any provision of this ordinance shall constitute a separate and distinct offense.

Sec. 12. Be it further ordained, etc., that any person violating any provision of this ordinance shall on conviction be punished by a fine of not less than ten dollars nor more than twenty-five dollars, or in default of the payment of such fine, by imprisonment in the parish jail for not less than ten days nor more than thirty days or both, at the discretion of the recorder having jurisdiction of the same.

Sec. 13. Be it further ordained, etc., that any law or ordinance in conflict with the provisions of this ordinance, in whole or in part, be and the same is hereby repealed.

Adopted by the board of health September 8th, 1914.

W. H. Robin, M. D.,
Secretary of the Board.

Approved September 10th, 1914.

W. T. O'Reilly, M. D.,
Superintendent of Public Health.

A true copy.

W. H. Robin, M. D.,
Secretary of the Board of Health.

The ordinance covers all buildings, outhouses, and superstructures, present and future, in the city of New Orleans, and for the purposes of rat-proofing divides them into different classes, stables, however, forming a class of their own.

Each of the defendants appeared, and pleaded to the affidavit against him as follows:

"Now comes defendant, and for demurrer to the affidavit and charge herein filed says:

"That the ordinance on which the charge and affidavit are based is in violation of articles 2 and 6 of the Constitution of the state of Louisiana, and that said ordinance is arbitrary, discriminatory and unjust, and deprived the appearer of his liberty and property without due process of law.

"That said ordinances, and particularly sections 3 and 4, are unreasonable and oppressive to the citizens and property owner.

"That said ordinance is void, there being no power or authority granted to the board of health of the city of New Orleans to legislate upon the subject-matter or to delegate the power and authority of said board as therein attempted.

"That said ordinance is illegal, oppressive, and unreasonable; that said ordinance is confiscatory, inasmuch as the costs and expenses of conforming to the measure in many cases equal the value of the property affected.

"Wherefore defendant prays that the affidavit herein may be quashed and the complaint against him dismissed, and that he be discharged without date, and for costs."

These "demurrers" were filed and overruled on the face of the affidavits.

Defendants then entered pleas of not guilty, and the cases were tried on the merits.

No bill of exceptions appears in either tran-

script, and no assignment of errors has been filed.

[1] A mass of evidence was adduced and taken down on the trials below, and counsel on both sides have argued these cases as if such evidence was properly before this court for its consideration.

The Supreme Court, however, cannot review such evidence. State v. Zagone, 135 La. 550, 65 South. 737; State v. Biles, 134 La. 859, 64 South. 799.

In a recent case the court said:

"The motions were overruled, and no bills of exception were reserved; and, as the transcript contains no assignment of error, and there is no error patent upon its face, it presents nothing for the court to act on." State v. Sam, 134 La. 376, 64 South. 145.

It is settled beyond dispute that:

"Testimony or documents found in the transcript will not be noticed unless the same comes up as a part of a bill of exceptions by being either in the bill itself or referred to in the bill and specially made part thereof." Marr's Crim. Jur. La. p. 852, and note 1.

[2, 3] As we cannot consider the evidence adduced on the trial of the case, the demurrers must be determined on the face of the original ordinance as amended.

The grounds of the demurrer are general, vague, and indefinite, and several of them involve mixed questions of law and fact which we cannot consider.

The ordinance does not deprive the defendants of their property, but requires them to make certain alterations and improvements deemed necessary by the board of health to prevent their premises from affording food and shelter to rats infected with the bubonic plague or liable to such infection.

In the leading case of Health Department of the City of New York v. Rector of Trinity Church, 145 N. Y. 32, 39 N. E. 833, 27 L. R. A. 710, 45 Am. St. Rep. 579, the court, through Peckham, J., held that due process of law does not require previous notice in a case like this, and that the compelling of expense to improve property by the exercise of the police power does not deprive the owner of his property without due process of law, if the exaction is not unreasonable either with reference to the nature or cost of the improvements. Whether the cost of a sanitary improvement will be confiscatory vel non is a question of fact. Defendants aver that the cost in some cases will prove confiscatory, but do not aver that such will be the result in their own cases.

The ordinance applies to every house, building, and superstructure in the city of New Orleans, and therefore cannot be considered as discriminatory.

In Powell v. Pennsylvania, 127 U. S. 678, 8 Sup. Ct. 992, 1257, 32 L. Ed. 253, the court sustained a statute of that state prohibiting the manufacture of oleomargarine. In considering the case the court said that every possible presumption is in favor of the validity of a statute until the contrary is shown beyond a reasonable doubt; and the question whether the manufacture of oleomargarine involved such danger to the public health as to require for the protection of the people the entire suppression of the business was one of fact and of public policy which belongs to the legislative department to determine. And the court further said:

"And, as it does not appear upon the face of the statute, or from any facts of which the court must take judicial cognizance, that it infringes rights secured by the fundamental law, the legislative determination of those questions is conclusive upon the courts." 127 U. S. at page 685, 8 Sup. Ct. at page 996, 32 L. Ed. 253.

Hence the validity of the ordinance now before us is presumed, as well as the existence of danger to the people, sufficiently great to warrant the board of health, in adopting the most drastic measures to suppress and eradicate the bubonic plague then prevalent in the city of New Orleans. There is nothing on the face of the ordinance to show that the defendants have been deprived

of any of their constitutional rights... As to the measures provided for the suppression and eradication of the pestilence, the court cannot substitute its judgment for that of the board of health.

Section 7 of Act No. 173 of 1912 vests in the municipal boards of health full power and authority to pass health and sanitary ordinances necessary and incident to the proper local sanitation of the city, including regulations as to the erection and arrangement of buildings, filling of lots, the vacation and demolishing of buildings, when necessary for the protection of the public health.

We think that the demurrers were properly overruled on the face of the amended ordinance of the board of health.

It is therefore ordered that the sentences below against the respective defendants be, and are hereby, affirmed, with costs.[1]

### Decree by Consent.

PER CURIAM. In compliance with the wishes of counsel for the plaintiff and appellee in the above numbered and entitled causes that a decree be entered in each of the above numbered and entitled cases sustaining the appeal of the defendants, reversing the sentence of the recorder, and that the costs of the appeals be paid by the plaintiff and appellee, and the counsel for the defendants and appellants having no objection:

It is therefore ordered, adjudged, and decreed that the appeals in the above numbered and entitled causes be sustained; that the sentence of the recorder in each of the above numbered and entitled causes be reversed; and that the costs of appeal in each of the above numbered and entitled causes be paid by the plaintiff and appellee.[2]

---

[1] See City of New Orleans v. Sanford, 137 La. 628, 69 South. 35, and City of New Orleans v. Stein, 137 La. 652, 69 South. 43.

[2] The same decree was also entered in each of the cases of the city of New Orleans against E. Schoeffner, F. Ricker, A. Lebesque, Sam Harris, and F. Carreau, Nos. 21423, 21445, 21449, and 21462-21464.