GLADNEY, Judge.
This is an action in the nature of a mandamus proceeding by relator, E. J. Stephens, brought primarily to compel the Mayor and City Building Inspector of the City of Natchitoches to issue a building permit which would allow him to move a residence from a commercial zone designated in the Zoning Ordinance of the City as C — 1, and relocate the structure on an adjoining lot classified residential R-4 under the City Zoning Ordinance, No. 539 of 1950. Additional relief is sought to require the City of Natchitoches to furnish electric *174 and sewerage service to the structure as relocated in the R-4 zone. The case was tried upon an agreed statement of facts and certain pertinent documentary evidence, after which trial there was judgment denying the relief sought and consequently relator has appealed to this court.
Eli J. Stephens is the owner of two adjoining lots in the City of Natchitoches, which are not otherwise identified in the record except as (1) the “southerly lot” situated on the corner of Texas and Fifth Streets in Zone C — 1; and (2) the adjacent lot in Zone R-4 immediately north of the previously described lot, which fronts on Fifth Street. On the lot in the R-4 Zone there are ten houses that were in existence at the time the zoning ordinance was adopted. On the lot in the C-l district, there is a store building and two residential structures, one of the residences being to the north and the other to the east of the store which was erected near the corner of Texas and Fifth Streets.
Relator desired to move one of the residences from the southerly lot and place it on his adjacent property to the north embraced in the R-4 Zone. Other plans of relator included an addition to the store building on the east side of his store which would utilize the space occupied by the residence to be moved to the lot on the north. Stephens discussed this matter with the City Building Inspector and the City Planning and Zoning Commission, and they advised him the execution of such a plan would violate the provisions of the zoning ordinance and would also conflict with provisions of another city ordinance, referred to as the Subdivision Ordinance. These discussions were informal but after his request was denied, Stephens, appeared before a regular meeting of the Mayor and Commissioners of the City of Natchitoches on November 12, 1956. There he displayed a drawing (not to scale) and explained his plans which contemplated the addition to the store in the commercial zone, and his plan to move the residence on the east side of the store building to his property on the north, which lies in the R-4 Zone. After a discussion of the matter, the city council took the following action as reflected in the minutes of the meeting, which read:
“Mr. John Makar, representing Mr. Eli Stephens, presented a plat showing existing structures on the property owned by Mr. Stephens on Texas Street. Mr. Makar asked the Commission to reconsider its refusal to grant Mr. Stephens a permit to alter and repair some of the existing buildings on the property. Mr. Makar insisted upon official action at this time one way or the other, intimating that legal action would be taken if a permit was not granted. After a very lengthy discussion, it was moved by Commissioner Taylor and seconded by Commissioner Scott that the Commission authorize the issuing of a permit as requested by Mr. Stephens. Upon roll call the vote was recorded as follows:
“Yeas: Dwyer, Scott, Taylor. Nays: Kees and Minturn, and the motion, therefore carried.”
On the following morning the attorney for relator made application for a building permit. It appears that the application for the permit as originally filed read as follows:
“I hereby apply for a permit to do the following work for E. J. Stephens, address Fifth and Texas, addition to store. I hereby certify that the contract price for the above work is the sum of $3,500.00”, and was signed “E. J. Stephens by John Makar.” Counsel for both sides agree that at some later time the words “move residence” were inserted before “addition to store” and “rent house” written after “addition to store”. The added words were inscribed on the face of the application by either the building inspector or one of his employees.
On November 15th the mayor and the members of his council met in an informal *175 meeting and reversed their vote as cast at the previous meeting. The action so taken was immediately communicated to relator and his attorney. Further formal action was taken by the council on February 15, 1957, at which time the council passed a resolution rescinding its action as of November 12th. Between the meeting of the council on November 12, 1956, and November 15, 1956, and February 15, 1957, no building permit was issued, nor, in fact, was any ever issued thereafter to Mr. Stephens by the building inspector. After receiving information of the meeting held on November 15th, and we assume, prior to February 15, 1957, relator moved the residence in accordance with his plans as submitted to the city council at the meeting of November 12th. It appears further that after the house was moved the city council passed an ordinance which directed the city officials to refuse to furnish to its resident citizens, water and other facilities, in cases where a violation of the zoning ordinance has taken place.
Relator alleges that he followed the procedure for securing a permit under the provisions of the Zoning Ordinance, No. 539 of 1950, whereby non-conforming usage of ground can be approved by the city council; and that such approval was granted by the council. Further, he asserts that the building inspector has consistently refused to grant the necessary permit as so authorized by the council and accordingly, he is .entitled to the relief requested.
The contention of the authorities of the City of Natchitoches, as we understand their answer, is that: (1) relator has never made a proper application for a building permit to move his buildings as required by the provisions of Ordinance 539 of 1950, in several particulars hereinafter discussed; (2) the city is also- justified in refusing a permit by reason of Ordinance No. 568 of 1951, commonly referred to as a Subdivision Ordinance, and which contemplates the compliance with certain conditions for the re-subdivision of property, and requires approval by the city council; (3) respondent declares that the residence was removed by relator without authority.
It should be observed at the outset that a writ of mandamus will only be issued by the court when there is a clear and specific legal right to be enforced and a duty which ought to be and can be performed; and that the writ is never granted in doubtful cases, but if granted it must also be effectual as a remedy and within the duty and power of the respondent to do the act in question. See: State ex rel. Hutton v. City of Baton Rouge, 1950, 217 La. 857, 47 So.2d 665. Relator does not pray that the ordinances pertinent to the determination of this case should be declared illegal or unconstitutional and consequently their legality and constitutionality must be presumed by this court. See: State ex rel. Hutton v. City of Baton Rouge, supra; City of New Orleans v. Ricker, 1915, 137 La. 843, 69 So. 273; City of New Orleans v. Toca, 1917, 141 La. 551, 75 So. 238, L.R.A.1917E, 761, Ann.Cas.1918B, 1032; Grosjean v. Standard Oil Company of Louisiana, 1935, 184 La. 45, 165 So. 325; State ex rel. Woods v. Register of State Land Office, 1938, 189 La. 69, 179 So. 38; Board of Barber Examiners of Louisiana v. Parker, 1938, 190 La. 214, 182 So. 485; Stovall v. City of Monroe, 1941, 199 La. 195, 5 So.2d 547.
The brief of appellant questions the effect of certain acts by the city council and particularly the meeting of the city council held on November 15, 1956, which was not a regular meeting. Further, criticism is directed against an ordinance passed by the city council prohibiting the furnishing of services by the city to any structures moved in violation to the zoning ordinance. The validity of these proceedings is not specially plead and is raised only by way of argument.
There is presented herein, in our opinion, but one issue and that is whether plaintiff, under the above statement of facts, was and is entitled to a building permit. If his *176 efforts to obtain such have not met the requirements imposed by the zoning ordinance, then this proceeding must fail for neither this, nor any other court, may rightfully require city officials to perform duties in violation of their lawful duties.
Pertinent provisions of the Zoning Ordinance, No. 539 of 1950, imposes, inter alia, the following restrictions:
It is therein provided no building shall be structurally altered or land be used for any purpose other than permitted in the zoning district in which such building or land is located; that no lot area shall be reduced or diminished, nor the density of the population increased in any manner except in conformity with the regulations of the ordinance; that every building located in the district defined as R-4 shall have a yard fronting on a street with not less than twenty-five feet and a rear yard having a depth of not less than twenty-five feet; and the minimum area of a lot is fixed at 6,750 square feet. Other provisions of the ordinance protect previously existing structures and lots from the penalty provisions of the ordinance under a section designated Section 12, with the caption “Non-Conforming Uses.” The argument of relator is that he has authority to remove the residence from his lot in Zone C-l to his lot in Zone R-4 under Section 12 of the ordinance, which, in part, states:
“(a) The lawful use of a ‘building’ existing at the time of the passage of this ordinance may be continued, although such use does not conform with the provisions hereof, and such use may be extended throughout the building provided no structural alterations are made, a non-conforming use of a building may be changed to another non-conforming use that is in the same, (or higher) use group as the previous non-conforming use until the building is removed, every future use of such premises shall be in conformity with the provisions of this ordinmce.” (Emphasis supplied)
As we 'interpret this section the status quo of the property existing at the time the ordinance went into effect is preserved, but structural alterations must have the approval of the planning commission or the city council and if the building is removed, every future use shall be in conformity with the provisions of the ordinance. Consequently, in order to conform to the provisions of Section 12, relator was required to disclose his plans and present an application for a building permit. He recognized the necessity of taking this procedure by making application for a building permit, and seeking approval by the city council after the permit was refused by the building inspector.
The ordinance, section 16, further prescribes that all applications for building permits shall be accompanied by a drawing or plat in duplicate, showing the location of the building on the lot, accurate dimensions of the building and lot, and such other information as may be necessary to provide for the enforcement of the regulations of the ordinance. The record contains relator’s plat not drawn to scale, but which does show that the dimensions of the house sought to be moved is 26' x 40' and contains some other figures which are not readily understandable. The plat does not strictly comply with the requirements of Section 16. There is, however, a plat of the property involved, prepared by A. J. Brouillette, a registered surveyor, which was completed at the request of the city. This plat shows all pertinent information and clearly shows that relator by moving the house from its present location in Zone C-l to its location in Zone R-4, has violated provisions of the zoning ordinance, particularly with reference to the depth of the front and rear yards and square foot area. These are sufficient reasons, in our opinion, for the respondents to refuse the requested application.
Relator earnestly insists, however, that the action of the council on November 12, 1956, in effect, constituted the granting *177 of its permission to carry out his intentions with reference to his two lots. This position is in effect that the mayor and city council had no right to rescind the action of November 12th.
The issuance, vel non, of a building permit is unquestionably an exercise of police power. Therefore, relator, if issued such a permit, acquired thereby no vested right to proceed under the permit contrary to later official action canceling the permission previously given. State ex rel. Shaver v. Mayor and Councilmen of Town of Coushatta, La.App.1940, 196 So. 388, a decision by this court. Therein relator applied for permission to erect a filling station in a residential section of Coushatta. Although no valid ordinance was in effect at that time, his application for a building permit was refused. While the case was pending on appeal the municipality passed a valid ordinance restricting the area to a residential zone. This court recognized the validity of the zoning ordinance, which, indeed, was not disputed or questioned by appellant, and denied the relief sought by relator. In State ex rel. Manhein v. Harrison, 1927, 164 La. 564, 114 So. 159, 163, the plaintiff who sought by mandamus to compel the issuance of a building permit for the erection of a service station contended that “her right to the permit should be determined by the conditions existing at the time the permit was applied for and the suit filed, without reference to an ordinance introduced and adopted thereafter.” The following pertinent observation was made:
“The ordinance, now before us, is sufficiently broad in its terms to prohibit the issuance of the permit here prayed for. The question is whether the council had a right to prohibit the issuance of permits previously applied for, though not granted, such as the permit in this case. We think that the council had such right. Every one holds his property subject to the police power. Because a person applies for a permit at a time when it might be lawfully granted does not give him a vested right to the permit. An ordinance may be validly passed after the making of such application which would prohibit the issuance of the permit. Thus, in Spector v. Building Inspector of Milton (250 Mass. 63, 145 N.E. 265), it was said:
“ ‘The fact that the petitioner filed his application for a permit before the zoning by-law was enacted is no reason why it should not be held applicable to him from and after it became operative. The petitioner held his property subject at all times to every valid exercise of the police power. The filing of his application gave him no vested rights. [Citing] City of Salem v. Maynes, 123 Mass. 372; Cherry v. Isbister, 201 App.Div. 856, 193 N.Y.S. 57, affirmed in 234 N.Y. 607, 138 N.E. 465; City of Des Moines v. Manhattan Oil Co., 193 Iowa 1096, 1102, 184 N.W. 823, 188 N.W. 921, [23 A.L.R. 1322]; Ware v. City of Wichita, 113 Kan. 153, 214 P. 99.”’
The argument of appellant is simply that once he had been granted permission by the city council which stood in lieu of a regularly issued permit, and as the action was reflected in the minutes of the city council meeting of November 12th, such permission could not thereafter be recalled or voided by subsequent action of the city. The above authorities, we think, clearly show that rights with reference to the use of one’s property are subject to a reasonable exercise of police power by the governing authority and petitioner herein secured no unalterable right or permission. It should be further observed, we think, that relator has never made a proper application for a building permit in compliance with the zoning statute. Until the requirements of the zoning ordinance are complied with, this court is without authority to order the issuance of the permit sought.
*178 It is our finding that plaintiff is not entitled to an issuance of a writ of mandamus compelling the city authorities of Natchi-toches to grant a building permit under the circumstances found to exist in this case. From this, it follows that the action of plaintiff in moving the residence owned by him from the lot located in Zoning District C-l to Zoning District R-4, as classified in the zoning ordinance, was without any right whatsoever and in violation of the zoning ordinance. Therefore, it is unnecessary that this court consider the additional relief requested in plaintiff’s petition which would require the city officials to furnish electricity, water and other services to the residences so removed by relator without authority.
Our conclusions herein coincide with those reached by the judge a quo, whose reasons for judgment we concur in. Accordingly, the judgment from which appealed is affirmed at appellant’s cost.