BARHAM, Justice.
 

 The Court of Appeal, 246 So.2d 723, transferred this case under the authority of Code of Civil Procedure Article 2162. That court concluded that appellate jurisdiction vested in this court under Louisiana Constitution Article VII, Section 10(2), since the appeal was from a district court judgment declaring a provision of the Code of the City of New Orleans unconstitutional. Plaintiff’s petition for injunction and damages in the main alleges that the
 
 acts
 
 of the Administrator of the Division of Housing Improvement are in violation of the Code of the City of New Orleans, Section 30-2, 7, 11, and 12. The only allegation of the unconstitutionality of the ordinance itself is leveled at Section 30-12 under the contention that the city had not the “authority to contract at petitioner’s expense for the repair of petitioner’s property without the necessity of filing a complaint in a Court of Law”. The petitioner further claims that the defendants
 
 acted
 
 in violation of the Constitution by failing to give notice and provide a hearing before contracting for repair of petitioner’s property at petitioner’s expense. Instead of determining whether the activities of the defendants were in violation of the city code itself or the Constitution, the district court granted petitioner the relief it sought by holding Section 30-12(2) (B) of the Code of the City of New Orleans unconstitutional.
 
 [1]
 

 The arguments before us generally concerned the question of the constitutionality of the provision itself. However, it is a well established rule that ordinances are presumed constitutional, City of New Orleans v. Ricker, 137 La. 843, 69 So. 273 (1915); City of New Orleans v. Beck, 139 La. 595, 71 So. 883 (1916); Chapman v. City of Shreveport, 225 La. 859, 74 So.2d 142 (1954); Everhardt v. City of New Orleans, 253 La. 285, 217 So.2d 400 (1969); and it is the uniform practice of the courts to refrain from deciding the constitutionality of laws until the necessity for such decision arises in the record before the court, Baker v. Grice, 169 U.S. 284, 18 S.Ct. 323, 42 L.Ed. 748; Alma Motor Co. v. Timken-Detroit
 
 *190
 
 Axle Co., 329 U.S. 129, 67 S.Ct. 231, 91 L.Ed. 128; Ranger v. New Orleans and New Orleans, etc., Co., Man.Unrep.Cas. 176; Parish of St. Landry v. Stout, 32 La.Ann. 1278; State v. Coulon, 197 La. 1058, 3 So.2d 241; Dowling v. Orleans Parish Democratic Committee, 235 La. 62, 102 So.2d 755; Aucoin v. Dunn, 255 La. 823, 233 So.2d 530. We need not and do not determine whether Section 30-12(2) of the Code of the City of New Orleans is unconstitutional.
 

 By amendment and reenactment of Section 30-12(2), a provision of the Minimum Housing Standards Code contained in the Code of the City of New Orleans, the Administrator of the Division of Housing Improvement was given the authority to determine whether a dwelling or dwelling unit, though not unfit for human habitation, violates certain of the minimum housing standards. If violations are found, the administrator is to advise the owner that upon failure to make the necessary repairs one or both of two courses may be pursued: (1) An affidavit may be filed against the owner in municipal court charging the owner with violations of the code, and upon conviction the owner may be fined and imprisoned; or (2) the administrator may have the dwelling fepaired, subject to availability of funds, and the cost of repairs becomes a lien against the property assessed and collected as a special tax with 10 per cent of the cost of repairs included to defray additional expenses.
 

 Other provisions of the Minimum Housing Standards Code provided for the serving of notice upon the owner, his agent, or the parties in interest of the defects to be corrected and for a hearing to be had on the matter.. If the administrator finds, after notice and hearing, that the dwelling is defective, he shall set out his findings of fact in writing and serve upon the owner an order requiring correction of the defects or sufferance of the penalties.
 

 This court said recently in White v. Louisiana Public Service Commission, 259 La. 363, 250 So.2d 368 (1971): “Administrative proceedings are not ordinarily governed by the strict rules of judicial proceedings. The key to pleading and procedure in that administrative process is the opportunity to prepare. * * * Generally inadequacies in pleading and notice may be cured if the record establishes a full hearing was had after proper preparation.” And in a footnote to the paragraph the court continued: “Even though due process may not require strict compliance with notice and pleading in administrative proceedings, and even though injustice may not result in a particular case, compliance with reasonable procedural rules is necessary for efficiency. * * * ”
 

 A determination of the applicability of the requirements of procedural due process to the administrative process is generally based upon the distinction between
 
 *192
 
 legislative and judicial functions. If the activity of the administrative body tends to assimilate the exercise of the legislative function, then procedural due process is not demanded since no such limitation is placed upon the legislature itself. If, however, a judicial function is involved, an analogy to judicial process is made, and the procedural safeguards developed in the administration of justice must be observed. For discussions of the distinctions of legislative-judicial functions, see 1 Cooper, State Administrative Law pp. 136-42, 151-3 (1965); 1 Davis, Administrative Law Treatise §§ 7.03, 8.04 (1958); F. E. Cooper, The Lawyer and Administrative Agencies pp. 80-4 (1957); M. Forkosch, A Treatise on Administrative Law §§ 28-33 (1956); R. Parker, Administrative Law pp. 33-53 (1952); B. Schwartz, An Introduction to American Administrative Law pp. 105-25 (2nd Ed. 1962).
 

 No matter how the authorities categorize the due process requirements for legislative and judicial functions all would agree that where, as in the instant case, the administrative agency adjudicates private property rights and obligations, the parties
 
 must
 
 be afforded an opportunity to be heard. Where private rights cannot otherwise be protected and there is no compelling public interest for summary action, there must be a full hearing before administrative action. The agency is acting quasi-judicially weighing public interest and benefit against the private rights of one to remain unhampered in his ownership, possession, and use of his property. The agency’s activity in forcing the repair of private property is analogous if not tantamount to a taking of the property for public benefit.
 

 The giving of notice of a hearing by administrative agencies need only be reasonable and need not meet the exacting requirements for notice in judicial proceedings. The type of notice and the method of notice vary with the quality of the proceeding and the results which can obtain after hearing. Notice must serve the purpose of informing the parties of the nature and time of the proceedings, the purpose of the hearing — i. e., the possible consequences or the manner in which interests may be affected — , and the method of presenting objections to the administrative action. The United States Supreme Court put it in these terms : “ ‘An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. * * * ’ ” Schroeder v. New York, 371 U.S. 208, 83 S.Ct. 279, 9 L.Ed.2d 255 (1962). See also 1 Cooper, op. cit. supra, pp. 273-86; 1 Davis, op. cit. supra, § 8.05; Forkosch, op. cit. supra, § 160; Parker, op. cit. supra, pp. 45-8.
 

 Having determined that constitutional due process requires a full hearing and reason
 
 *194
 
 able notice before that hearing, we examine the circumstances of this case to see whether these requirements have been met.
 

 The Division of Housing Improvement selected property owned by Tafaro’s Investment Company, Inc., the premises at 2321-Felicity Street, as a dwelling which did not meet the requirements under the Minimum Housing Standards Code. Inspection was made of the premises in July of 1968, immediately after the housing code had been amended to include premises not unfit for habitation and to provide as an alternative to penal sanctions the right of the city to repair. A year and a half later, on January 28, 1970, the agency caused a contract to be let for repairs to the subject property. A few days after the letting of the contract, Mr. Tafaro, president and manager of the plaintiff corporation, died. On March 18, 1970, the secretary-treasurer of the corporation, having learned about the repairs, contacted the agency and was told to consult an attorney, and this suit was filed.
 

 The plaintiff is a small family corporation owning rental properties throughout the city. Both before and during the proceedings connected with the subject property the agency had many contacts with Mr. Tafaro about other corporation properties which the agency believed did not conform to the code. Moreover, in all matters affecting the corporation’s other properties the agency had dealt with Mr. Tafaro and sought com■pliance through court proceedings when voluntary compliance was not forthcoming.
 

 After the initial inspection of the subject property in July, 1968, the agency, having noted certain defects in the building, sent a letter dated September 11, 1968, to the corporation through regular mail to an address that was neither the domicile of the corporation nor the address of its registered agent.for service of process. The record fails to disclose what if any connection the address had with the plaintiff, or whether the letter was in fact received. Notice mailed to an incorrect address, in the absence of a showing of actual notice, does not constitute that notice which is required in these proceedings. Since the hearing sought to be had (if the meeting called for in this letter can be called a hearing) is the only “hearing” ever scheduled by the agency, we could dispose of the case at this point because the record fails to establish notice in reasonable form or in fact.
 

 There are, however, other deficiencies in these proceedings. The “notice” letter was an informal, casual, and even solicitous communication. It stated that the agency wished to “discuss” the housing requirements, that a hearing was scheduled so that plaintiff could “discuss this matter” with the agency, that the agency “wished to be of service”, and that the matter could be “discussed over the telephone which will eliminate the necesssity of appearing in per
 
 *196
 
 son”. Apart from the failure of proving any notice, this letter, even if delivered, is not couched in sufficiently unequivocal terms to give notice. The letter does not meet the requirement we have above set forth of giving notice of the purpose of the hearing, the consequences which may flow from the hearing, and the manner of presenting objections. Certainly the letter does not warn that a determination is about to be made which would give to the city the right to expend large sums of money in the repair of plaintiff’s property for which plaintiff would he assessed, with its property subjected to lien.
 

 Though we must keep in mind that the agency never afterwards attempted to schedule a hearing, it is pertinent to follow the several other communications sent to plaintiff by the agency.
 

 In a second letter, sent by registered mail on October 1, 1968, and receipted by Mr. Tafaro, the agency stated that the subject property failed to meet the code requirements as shown in the specifications attached. The letter “ordered” that the defects so listed be under repair by November 18, 1968, and stated that otherwise the agency would be required “to institute
 
 legal
 
 action”. The unambiguous language of the letter gave notice that the agency’s recourse in the future would be through court proceedings ; and certainly in the context of the agency’s relationship with Mr. Tafaro he had every reason to believe that the agency’s resort would be to a court of law.
 

 After a second inspection on November 15, 1968, which showed that no repair work was in progress, a third letter, dated November 21, simply contained a copy of the specifications of violations. No action was taken, and a fourth letter dated March 5, 1969, was sent by registered mail to another address, and was receipted by an employee of the corporation. That letter stated:
 

 “March 5, 1969
 

 “Tafaro Investment Co.
 

 “1801 Carondelet Street
 

 “New Orleans, Louisiana 70130
 

 “Re: 2321-23 Felicity Street
 

 “Dear Sirs:
 

 “Section 30-12(2) of Chapter 30 of the Code of the City of New Orleans, known as the Minimum Housing Standards Code, has been amended and re-enacted to give this Division of Housing Improvement the authority to contract for repairs on property when the dwelling is found to violate certain of the Minimum Housing Standards and, after notification, the property owner does not make said repairs to the dwelling. On December 12, 1968, an ordinance was passed giving to the Housing Improvement Revolving Fund the sum of $15,000 to implement the ordinance.
 

 “Your property at
 
 2321-23 Felicity Street is being considered as a possible
 
 
 *198
 

 case under the provisions of the new section.
 
 This property was inspected on July IS, 1968 and to date, no appreciable repairs have been accomplished. We believe enough time has elapsed in order for you to have shown good faith in the matter. However, because of one reason or another, repairs have not been accomplished. In the interim,
 
 it has been noted that additional defects have occurred or were found to exist.
 
 Accordingly, we are sending you a list of the original defects and the additional ones. If we do not receive from you, within 30 days of the date of this letter, a copy of a written contract or contracts for repairs of all work,
 
 we will then make a decision as to vohether or not to use the new section of the ordinance in this case or to resort to other methods for compliance.
 
 Please consider this your final notice in this matter.
 

 “Sincerely yours,
 

 “Christopher J. Bellone
 

 “CJB/pac
 

 “Enclosure” (Emphasis supplied.)
 

 The specification of violations— the finding of fact by the agency — had been changed because of newly discovered defects. The total repairs required to meet the code requirements, the basis for the repair contract to be let, are for the first time set forth in full detail. However, the agency had not provided for notice or hearing before revising its finding.of fact, and no hearing was contemplated. . According to the letter the agency had
 
 not
 
 actually decided upon its course of action. It had yet made no determination that plaintiff’s property would be repaired under city contract with assessment of costs to plaintiff. Plaintiff was told only that the agency might possibly apply the “new section” of the law to it. As a matter of fact, no further action was taken by the agency until almost a year later, when the fifth and final letter dated January 7, 1970, was sent to the plaintiff by regular mail to the same address as the fourth letter. This letter notified plaintiff that the agency intended to sign contracts for repairs on the property within two weeks. As previously noted, the contract was executed on January 28, 1970. Mr. Tafaro. died February 3, 1970, and another officer of the corporation learned of the city’s repair effort in March, 1970.
 

 The constitutional due process requirement of notice and hearing in administrative proceedings has not been met by this agency. While the ordinance does provide for notice and hearing, that procedure was not followed in such a manner as to satisfy the due process requirements of reasonable notice and adequate hearing.
 
 [2]
 
 
 *200
 
 The result is a clear illustration of thé necessity for administrative agencies, especially when acting adjudicatively, to comply, with reasonable procedural requirements at least to the point of affording the parties due process.
 

 The agency has acted adjudicatively to deprive plaintiff of valuable property rights by a method not too dissimilar to public condemnation and appropriation, and has done so without notice or hearing. No argument can be made that the administrative agency had to act quickly for the protection of the public so that summary proceedings were necessary. Indeed, the agency’s very casual and discontinuous procedure over the extended period of time clearly speaks to the contrary on this point.
 

 We hold that the agency has acted contrary to constitutional requirements in contracting without notice and hearing for the repairs of plaintiff’s property at plaintiff’s cost.
 

 For the reasons assigned the judgment of the trial court is set aside insofar as it declared unconstitutional Section 30-12 (2) (B) of the Code of the City of New Orleans; in all other respects it is affirmed.
 

 SUMMERS, J., concurs in the result.
 

 DIXON, J., concurs.
 

 [1]
 

 . Although the judgment itself does not declare the section of the code unconstitutional but simply enjoins the defendants from further action, the seasons for judgment hold the law unconstitutional. Under Schlekau v. City of New Orleans, 241 La. 1079, 133 So.2d 603 (1961), the reference in the judgment to the reasons is sufficient to meet the jurisdictional requirement.
 

 [2]
 

 . As previously noted, we pretermit a determination of whether the notice and hearing requirements as set forth in the code and the other provisions of the code as well are, in and of themselves, sufficient to meet the constitutional test.