HAWTHORNE, Justice.
 

 Relator, F.landers H. Hutton, being desirous of continuing the operation as a common carrier of a motor bus line wholly within the corporate limits of the City of Baton Rouge over certain designated streets and roads and between fixed termini and on a fixed schedule and for certain designated fares, instituted a proceeding in the district court seeking a writ of mandamus to compel the respondent, City of Baton Rouge, to issue to him a certificate of public convenience and necessity so that' he might continue such operations,, and praying in the alternative that the-city be ordered and directed to grant him a public hearing on his application for such certificate in' the event the application for the certificate had not been denied by the city council. After trial on the merits, the lower court maintained a plea to the jurisdiction ratione materiae and also' an exception of no cause of action filed by the respondent city, and relator has appealed.
 

 Prior to an expansion of the city limits of the City of Baton Rouge on January 1, 1949, relator was engaged in the business of operating motor busses for hire-over certain designated routes, most of which lay outside the corporate limits. After the extension of these limits on January 1, however, all the routes over which
 
 *867
 
 relator operated were within the corporate limits of the city. On January 5, 1949, relator made written application to the city for a certificate of convenience and necessity to continue the operation of his bus line, but the city council took no action thereon.
 

 At the time relator filed this written application, there was in full force and effect an ordinance adopted by the city council of the City of Baton Rouge on May 31, 1948, which required all bus lines operating within the city to obtain a
 
 franchise
 
 from the city. This ordinance also provided that such franchises would be granted only to applicants who submitted proof of certificates of convenience and necessity and who established an office or domicile in the city; further, that the franchise •should stipulate the services to be given, the rates to be charged, the measures to be taken in regard to the safety of the public, such as insurance for surety of patrons and the public, and should set forth to what extent the streets, alleys, and public grounds of the City of Baton Rouge might be used, and
 
 the consideration to be given the city for such usage,
 
 etc.
 

 Without having acted on relator’s application, the city council on July 6, 1949, adopted two other ordinances, one designated as “Bus Ordinance of 1949” and the other as “Baton Rouge Bus Company Franchise Ordinance of 1949”. The Bus Ordinance of 1949 provides in Section 1 that no person, firm, corporation, or association of persons shall transport passengers for hire in busses from one point or area within the corporate limits of the city to another point or area within such corporate limits without first having obtained from the council a
 
 franchise
 
 or a temporary permit. (Relator is presently operating under a temporary permit which will expire June 15, 1950.) This ordinance in the preamble recognizes, ratifies, and extends the franchise previously granted to the Baton Rouge Bus Company to operate over routes over which relator does not operate and for which he is not seeking a certificate of convenience and necessity, and further declares “ * * * that no additional franchises for the transportation by bus of passengers for hire wholly within this city [shall] be granted at this time or within the near future * * * The preamble of the ordinance also sets forth that this is done for the reason that during the recent war a multiple system of bus operations arose which was unsound economically and which, if continued indefinitely, would prevent the city from being provided with, an adequate, efficient,, and economical system of bus transportation, and that the public convenience, safety, and welfare require that all bus transportation throughout the city be provided by a single, integrated, and coordinated system. This ordinance further contains provisions with reference to the obligations and duties of the operators of bus lines under a franchise granted by the city.
 

 
 *869
 
 The Baton Rouge Bus Company Franchise of 1949, among other things, ratifies and confirms the franchise previously issued to that company and contains the following provision: “Though this Council has no present intention of granting other or additional franchises for the bus transportation of passengers for hire within this city in the future, this Council hereby expressly declares that the said franchise of the Baton Rouge Bus Company is not exclusive.”
 

 It is relator’s contention that the adoption of these two ordinances by the council had the effect of denying and refusing to him a certificate of public convenience and necessity.
 

 Relator did not plead or pray that any of these ordinances be declared illegal or unconstitutional, and under such circumstances their legality and constitutionality are presumed. City of New Orleans v. Ricker, 137 La. 843, 69 So. 273; City of New Orleans v. Toca, 141 La. 551, 75 So. 238, L.R.A.1917E, 761, Ann.Cas.l918B, 1032; Grosjean v. Standard Oil Co. of Louisiana, 184 La. 45, 165 So. 325; State ex rel. Woods v. Register of State Land Office, 189 La. 69, 179 So. 38; Board of Barber Examiners of Louisiana v. Parker, 190 La. 214, 182 So. 485; Stovall v. City of Monroe, 199 La. 195, 5 So.2d 547.
 

 Furthermore, an appellate court of this state has held that a mandamus proceeding is not a proper proceeding for a relator to attack the validity of a statute. The reason for this holding, as succinctly set out in State ex rel. Monk v. Police Jury of Vernon Parish, La.App., 3 So.2d 186, is that a writ of mandamus will issue only to compel a public official to perform a purely ministerial duty, a duty which a law or an ordinance in plain and unmistakable terms requires him to perform as a part of, and in connection with, his official functions, and, if the law under which the public official is acting is attacked as being illegal, the writ would operate not to compel the official to do what the law requires him to do, but to do just the opposite.
 

 Relator calls our attention to Section 20 of the act of the Legislature incorporating the City of Baton Rouge, Act 169 of 1898, as amended and reenacted by Act 334 of 1946, which provides that “The Council [of the City of Baton Rouge]; shall have the power to enact all laws and ordinances necessary for the general welfare of said corporation, and the inhabitants thereof; and to this end, the Council is specially empowered to pass ordinances; * * * to regulate the ownership and operation and to determine and restrict the number of taxicabs, busses, and other vehicles conveying passengers upon and over the streets of the City of Baton Rouge, for hire, to require such operators to obtain from the Commission Council a certificate of convenience and necessity before operating vehicles for hire on the streets of the City of Baton Rouge, and
 
 *871
 
 to require of such operators the posting of adequate bonds or the creation of a trust fund or funds, or as the Commission Council may determine, to protect the public for injuries and damages to person and property caused by the illegal and wrong-. ful operation of any such taxi-cabs, busses, trucks and vehicles.”
 

 On the basis of this provision, the relator contends that “ * * * the legislature, being the author of all power to the city, has only granted the city the right to regulate the use of its streets by for hire passenger busses and to require the operators of such busses to obtain certificates of convenience and necessity. Further, that to give to one and deny another without rule or guidance would be arbitrary, and that is what the city has done by its two ordinances of July 6, 1949”.
 

 Although the provisions of the charter of the city of Baton Rouge, quoted herein-above, provide that the city
 
 may
 
 require such certificates, as far as this record discloses, there is no ordinance of the city which grants to any individual who holds such certificate the right to operate a motor bus line in the city on certain designated routes, between fixed termini, on schedule, and for stated fares. In other words, the city has not elected or seen fit, under the authority of the quoted provision of the act, to permit the operation of such a business- by any individual who merely secures such a certificate.
 

 There is a distinct difference between a certificate of public convenience and necessity and a franchise, and, if this court granted -to relator the certificate he prays, for, it would not entitle him to operate his bus line under an ordinance which in clear and unmistakable terms requires a franchise.
 

 A certificate of public convenience and necessity is in the nature of a personal privilege or license, which may be amended or revoked by the power authorized to issue it, and the holder does not acquire a property right. Such certificate is issued for the purpose of promoting the public convenience and necessity, and not for the purpose of conferring upon the holder any proprietary interest. The number of such certificates to be granted over a particular route may be limited by restricting the number of busses to the needs of the public, so as to occasion as little inconvenience as possible to the persons using the route and to insure to the holder of such certificate certain immunities from competition so that he may offer the public regular and continuous service. On the other hand, a franchise to use the streets in its usual sense is the right to use or occupy the streets for a stated period of time, for which a valuable consideration is paid, and contemplates a contract between the municipality and the individual to whom granted, and vests in the holder thereof a limited property right to use the public streets. See Pennsylvania R. Co. v.
 
 *873
 
 Public Utilities Commission of Ohio, 116 Ohio St. 80, 155 N.E. 694; Ex parte Lockhart, 350 Mo. 1220, 171 S.W.2d 660; Effenberger v. Marconnit, 135 Neb. 558, 283 N.W. 223; Re St. Johns River Line Company et al., 7 P.U.R.(N.S.) 268; Kitsap County Transp. Co. v. Manitou Beach-Agate Pass Ferry Ass’n, 176 Wash. 486, 30 P.2d 233.
 

 In 23 Am.Jur., Franchises, sec. 4, p. 717, we find: “As a rule, franchises spring from contracts between the sovereign power and private citizens, made upon valuable considerations, .for purposes of individual advantage as well as public benefit, and in such case a franchise partakes of a double nature and character. So far as it affects or concerns the public, it is publici juris and is subject to governmental control. The legislature may prescribe the manner of granting it, to whom it may be granted, the conditions and terms upon which it may be held, and the duty of the grantee to the public in exercising it, and also provide for its forfeiture upon the failure of the grantee to perform that duty. But, when granted, it becomes the property of the grantee, and is a private right, subj ect only to the governmental control growing out of its other nature as publici juris.”
 

 This same work, in Section 3 of' the same title, p. 716, gives the distinction between a franchise and a license — a certificate of public convenience and necessity is a license — , as follows; “ * * * A license has been generally defined as a mere personal privilege to do acts upon the land of the licensor, of a temporary character, and revocable at the will of the latter * * *. A franchise, however, is neither personal nor temporary, and it is not revocable at the mere will of the grantor in the absence of a reservation of such right.”
 

 The City of Baton Rouge itself has recognized the distinction between a franchise and such a certificate, as evidenced by the requirements found in its ordinance .adopted on May 31, 1948, wherein it was provided that a franchise should be granted only to applicants who submit proof of such certificates, and that such franchise should set forth the consideration to be given the city for the use of its streets.
 

 The power and authority of the City of Baton Rouge to require such a franchise cannot be an issue in this proceeding, and we express no opinion on the legality or constitutionality of the various ordinances making such requirement.
 

 What relator is really seeking and requesting of the court is for it by writ of mandamus to order the commission council of the City of Baton Rouge to legislate — that is, to adopt an ordinance where none exists, permitting him to conduct his bus business by merely securing a certificate of public convenience and necessity. Counsel for respondent in brief filed in this court make this apt comment on relator’s
 
 contention: “ * * * in
 
 effect Hutton [relator] is seeking to have all of
 
 *875
 
 the rights which will flow from the franchise without in actuality asking for one. For if he can compel the City to say that he is entitled to a certificate of convenience and necessity and to allow him to operate a bus route through the city on that basis, then he would have no need of obtaining a franchise and yet would have all the benefits that would flow from having obtained one.”
 

 The writ of mandamus issues only when there is a clear and specific legal right to be enforced or a duty which ought to be and can be performed. This writ is never granted in doubtful cases, and
 
 the writ, if granted, must also be effectual as a remedy,
 
 and it must be within the power of respondent, as well'as be his duty, to do the act in question. See High’s Extraordinary Legal Remedies, 3d Ed., sec. 9, p. 12; Bassett v. School Directors of Second District, 9 La.Ann. 513; State ex rel. Lacaze v. Cavanac, 30 La.Ann. 237; State ex rel. Savage v. Robertson, 124 W.Va. 667, 23 S.E.2d 281; State ex rel. Kansas City Bridge Co. v. Missouri Workmen’s Compensation Commission, Mo.Sup., 92 S. W.2d 624; Campbell v. State ex rel. Garrett, 133 Fla. 638, 183 So. 340; State ex rel. McLaughlin v. Morris, 128 W.Va. 456, 37 S.E.2d 85; Fairall v. Redmon, 107 Colo. 195, 110 P.2d 247; State ex rel. City of Tacoma v. Rogers, 32 Wash.2d 729, 203 P.2d 325; People ex rel. Cassidy v. Fisher, 372 Ill. 146, 22 N.E.2d 937; Blalock v. Johnston, 180 S.C. 40, 185 S.E. 51, 105 A. L.R. 1115.
 

 In State ex rel. Savage v. Robertson, supra, the rule followed in all of the cases cited above is stated thus: “ * * * Mandamus will not be issued to compel the performance of an act which would not result in any benefit to the party seeking the writ. * * *” [124 W.Va. 667, 23 S.E.2d 288],
 

 The ordinances of 1949 which relator has annexed to his petition, as well as the one of May 31, 1948, which was in effect when he filed his application, show that the City of Baton Rouge requires a
 
 franchise
 
 before a motor bus line can be operated in the city, so that, even if this court granted to the relator the relief which he seeks and compelled the city to issue to him a certificate of convenience and necessity, he would nevertheless not be entitled to operate his bus line. There is no ordinance in the record which would permit the operation of the bus line upon relator’s obtaining a certificate of public convenience and necessity, whereas there are ordinances which prohibit such operation without a franchise from the city, and, as long as they are in effect, the relator is bound by them.
 

 For the reasons assigned, the judgment of the lower court sustaining the exception of no cause of action and dismissing relator’s suit is affirmed; relator to pay all costs.