AYRES, Judge.
The Caddo Parish School Board instituted this action in the nature of a mandamus proceeding to require the City of Shreveport to gratuitously pick up and dispose of garbage and trash accumulated at the 57 schools, having an enrollment of 41,000 pupils, operated by the board within the corporate limits of the city.
The trial court concluded that the service requested by the school board was not a mere ministerial duty of the city but was one in which the exercise of some discretion was involved, particularly in view of the city’s financial ability, or lack thereof, to render such service. Accordingly, there was judgment rejecting plaintiff’s demands, from which it appealed.
Heretofore, through agreements with private individuals and concerns, the school board has contracted for the collection and disposal of garbage and refuse at the schools, now estimated at 20 tons per day. The operations of the city pertaining to garbage and trash pickup and disposal are conducted under a budget supported by taxation. Two million dollars for the current fiscal year is budgeted to pay the cost of the collection; additional funds are provided to defray the cost of the disposal. The city has in operation two incinerators with a combined daily capacity of 350 tons. It also operates four landfills to accommodate the garbage and refuse in excess of the capacity of the incinerators. In this connection and disposal, the city makes pickups through the use of 59 trucks under a schedule of garbage pickup twice a week and of trash pickup once a week. There is no city ordinance which defines or limits the persons or businesses with respect to the collection and disposal of garbage and trash. Through attempted negotiations, it was proposed by the Commissioner of Public Works that the city, for a price of $50,700 per year for a 3-year period, collect and dispose of the schools’ garbage and refuse. This proposal was rejected by the school board.
*86 A mandamus is defined as a writ directed to a public officer to compel the performance of a ministerial duty required by law. LSA-C.C.P. Arts. 3861 and 3863.
A general rule is established in the jurisprudence of this state to the effect that (quoting from State ex rel. Hutton v. City of Baton Rouge, 217 La. 857, 47 So.2d 665, 669 [1950]):
“The writ of mandamus issues only when there is a clear and specific legal right to be enforced or a duty which ought to be and can be performed. This writ is never granted in doubtful cases, and the writ, if granted, must also be effectual as a remedy, and it must be within the power of respondent, as well as be his duty, to do the act in question.”
See the authorities therein cited and also:
State ex rel. Torrance v. City of Shreveport, 231 La. 840, 93 So.2d 187 (1957); Deville v. City of Oakdale, 180 So.2d 556 (La.App., 3d Cir. 1965); Cloud v. Bushnell, 168 So.2d 275 (La.App., 3d Cir. 1964-writ denied); Gautreau v. Board of Electrical Examiners, 167 So.2d 425 (La.App., 1st Cir. 1964).
Under provisions of its charter, the City of Shreveport is granted the power “To collect and dispose of garbage and refuse; to acquire, maintain, own and operate facilities for the disposal of the same within and without the City; * *
In Deville v. City of Oakdale, supra, an action was instituted to compel the municipality to open two streets adjacent to plaintiff’s residential property. The issue was whether plaintiff was entitled to a writ of mandamus for the purpose. The court recognized the principle that a mandamus lies only to compel the performance of purely ministerial duties or to correct an arbitrary use of discretion, and that a writ will not issue in doubtful cases. The question of abuse of discretion was not an issue in the case. In disposing of the issue before the court, the court stated:
“Let us now see whether the city has a clear and specific ministerial duty, required by law, to open these dedicated streets. The city of Oakdale is governed by the provisions of LSA-R.S. 33:321 et seq., commonly called the ‘Lawrason Act’. LSA-R.S. 33:401 provides in pertinent part that the mayor and board of aldermen shall have ‘power’:
“‘(18) To maintain streets and roads in the limits of the municipality.’
“‘(19) To close and vacate any street or alley, or any portion thereof, and where the fee is in the municipality to lease or dispose of same by sale or otherwise.
* * * * * *
“‘(21) To exercise full jurisdiction in the matter of streets, sidewalks, sewers, and parks; to open, lay out, and construct the same; to repair, maintain, pave, sprinkle, adorn, and light the same.’
“Counsel have cited no case deciding whether the duties of the municipality with reference to streets, as quoted above, are discretionary or ministerial. However, we think it is apparent from a mere reading of the statute, that these duties are discretionary. By the very language of the Lawrason Act, the municipality is given the 'power’ to open, lay out, construct, maintain, close and otherwise regulate and control streets within its boundaries. No statute has been called to our attention which provides that the city must open and maintain all dedicated streets in its jurisdiction. In the absence of any such clear and specific ministerial duty required by law, a writ of mandamus cannot issue.” (Emphasis supplied.)
180 So.2d 556, 558.
Under similar statutory provisions, the city is given the “power” to provide for *87 the collection and disposal of garbage and refuse. It is discretionary on the part of the city, at least as to the manner in which this may be done, whether by taxation, or by assessment of charges, or by contracts fixing compensation for services in particular cases.
Moreover, it has been held that a school board, in connection with its school lunch program, may provide for disposal of garbage which accumulates in the operation of such program and is authorized, under the provisions of LSA-R.S. 17:195, to enter into contracts to provide for garbage disposal services for the schools.
Disposal Systems, Inc. v. Calcasieu Parish School Bd. 243 So.2d 915 (La.App., 3d Cir. 1971).
In the course of its opinion in that case, the court pointed out:
“School boards are specifically authorized to maintain and operate lunch departments on a non-profit basis to provide meals for school children attending the public schools within their respective jurisdictions. LSA-R.S. 17:82. LSA-R.S. 17:195 provides, in part, that:
“ ‘The school boards, in order to provide for the operation of school lunch programs in schools under their jurisdiction, may enter into contracts with respect to food, services, supplies, equipment, and facilities for the operation of such programs * * (Emphasis added.)
“A school board need not have specific legislative authority for every act which may be incidental or necessary to the performance of its duties. It has such implied or additional powers as are necessarily and properly incident to the performance of its statutory duties. Watkins v. Ouachita Parish School Board, 173 La. 259, 136 So. 591 (1931); Lincoln Parish School Board v. Ruston College, 162 So.2d 419 (La.App, 2 Cir. 1964).
“We think one of the ‘services’ which a school board may provide in connection with the operation of its school lunch program is for the disposal of the garbage which accumulates in the operation of such a program. Under the provisions of LSA-R.S. 17:195, the school board is authorized to enter into contracts to provide for garbage disposal services for the schools.
“Our conclusion is that the School Board has authority to enter into a contract with Disposal Systems for the disposition of garbage and refuse from the schools in Calcasieu Parish, and that the School Board is not precluded from entering into such a contract by the previous agreements which the Police Jury entered into with Calcasieu Sanitation Service.” (Emphasis supplied.)
243 So.2d 915, 919-920.
Not only is the power thus conferred upon municipalities and school boards to provide for the collection and disposal of garbage and refuse, but such powers are also granted to parishes. The court in the Disposal Systems case pointed out:
“Although LSA-R.S. 33:2922(B) specifically grants to parishes and municipalities the right to enter into time contracts for garbage and waste disposal services, we find nothing in that statute, or in any other, which vests that authority exclusively in parishes or municipalities. No statutory or constitutional provision has been pointed out to us which prohibits any other political corporation or body from contracting for its own garbage disposal services.”
243 So.2d 915, 919.
Thus, it was held that contracts entered into by parishes or municipalities for the collection and disposal of garbage and refuse do not bar or prohibit a school board from entering into similar contracts though the schools may be located in areas serviced under a garbage collection contract with a police jury.
It is therefore clear that plaintiff school board has the authority to contract for the collection and disposal of its own garbage, and, as has already been noted, it has, in *88 deed, done so for many years. The school board is requesting that the city perform a service that it is empowered and authorized to do itself. No law or ordinance has been pointed out to us, and we know of none, which provides that the city shall pick up and dispose of garbage and refuse accumulated at the schools operated by plaintiff.
Consequently, it can only be concluded that the legal duty and responsibility of the city to pick up and dispose of garbage and refuse accumulated at the schools has not been established. This is particularly true in view of the fact that the power conferred upon the city, in general terms, with respect to this subject, is likewise conferred upon the school board in regard to the garbage and refuse accumulated at the schools. There is, therefore, no clear and specific legal right to be enforced against the city, nor is it under a duty which clearly ought to be and can be performed. Thus, the showing made is insufficient for the issuance of a writ of mandamus.
The judgment appealed is accordingly affirmed at plaintiff-appellant’s costs.
Affirmed.