SAMUEL, Judge.
Plaintiffs, the Plaquemines Parish Commission Council and the Plaquemines Parish School Board, filed this mandamus proceeding against the Sheriff and Ex-Officio Tax Collector for the Parish of Plaquemines seeking to force him to turn over to plaintiffs funds received from collection of ad valorem taxes paid under protest by five pipeline companies and two railroads, all owners of public service property in Plaque-mines Parish. The seven pipeline and railroad companies intervened.[1]
Following the overruling of exceptions of no cause of action and after a trial on the merits, there was judgment granting the writ of mandamus and ordering the defendant to turn over and pay to the plaintiffs the ad valorem tax funds paid under protest by the seven intervenors. Defendant and the intervenors appealed. However, the five pipeline companies subsequently dismissed their appeals and the only appellants now before us are the defendant and the two railroad intervenors. With our permission, the Police Jury Association of Louisiana has filed an amicus curiae brief in support of plaintiffs’ position.
The facts are relatively simple. The in-tervenors paid to the defendant certain ad valorem taxes for the year 1978. Each paid all or part of those taxes under protest. Defendant accepted these taxes, separated those paid under protest from the other taxes he had received, and held in escrow the taxes paid under protest.. Within thirty *530 days of the payments, the seven intervenors filed suits against the defendant seeking return of the taxes paid under protest. These suits are still pending.
While these suits were pending, and while defendant continued to hold the disputed funds separately from other taxes collected, plaintiffs brought the present mandamus proceeding to force the defendant to turn the disputed funds over to them.
Appellant’s basic contention is that the trial court should not have issued the writ of mandamus against him because he was performing his ministerial duties precisely in accordance with law. They argue there is no statute or law of any kind which directs the ex-officio tax collector to pay tax funds received under protest to the governmental bodies designated to eventually receive such taxes until timely filed suits against him to reclaim the taxes paid under protest have been decided. They further argue that under the provisions of Revised Statute 47:2110 he is specifically prohibited from paying over any tax funds received under protest while suits regarding those funds are still pending.
The Louisiana Tax Commission is obliged to appraise all public service properties. The Commission is also the review board with regard to assessment of all such properties. During 1978, the Commission issued its initial determination of the value of the properties belonging to the intervenors. It later held hearings with regard to these assessments and issued its final determination of the assessment value of the properties. The seven companies appealed from that final order to the Nineteenth Judicial District Court for the Parish of East Baton Rouge, seeking a change in their tax assessment and valuation for the year 1978. These seven companies are the same companies who filed suits in the Twenty-Fifth Judicial District Court for the Parish of Plaquemines seeking to have the money paid under protest returned to them. Consequently, there are now two separate sets of suits contesting the assessment and the payment of taxes by the intervenors, one filed in the Nineteenth Judicial District Court on appeal from the assessment of the Louisiana Tax Commission, and the other in the Twenty-Fifth Judicial District Court seeking return of the taxes paid under protest.
The Louisiana Constitution of 1974, Article 7, Section 3, provides the legislature “shall prohibit issuance of process to restrain the collection of any tax” and further mandates the legislature to provide “a complete and adequate remedy for the prompt recovery of an illegal tax paid by a taxpayer.”
The applicable law is Revised Statute 47:2110 which, in pertinent part, reads:
“No court of this state shall issue any process whatsoever to restrain the collection of an ad valorem tax imposed by the state, or by any political subdivision thereof, under authority granted to it by the legislature or by the constitution. Any person resisting the payment of any amount of tax found due, or the enforcement of any provision of the tax laws in relation thereto, shall pay the amount found due to the officer designated by law for the collection of such tax and shall give the officer notice at the time of payment of his intention to file suit for the recovery of such tax. Upon receipt of such notice, the amount so paid shall be segregated and held by the officer for a period of thirty days. If suit be filed within such time for the recovery of the tax, such amount so segregated shall be further held pending the outcome of the suit. If the taxpayer prevails, the officer shall refund the amount to the taxpayer with interest at the rate of two per cen-tum (2%) per annum for the period from the date such funds were received by the officer to the date of such refund.
The right to sue for recovery of a tax paid under protest as provided herein shall afford a legal remedy and right of action in any state or federal court having jurisdiction of the parties and subject-matter, for a full and complete adjudication of any and all questions arising in the enforcement of such right respecting the legality of any tax accrued or *531 accruing or the method of enforcement thereof. In any such suit, service of process upon the officer designated by law for the collection of the tax shall be sufficient service, and he shall be the sole necessary and proper party defendant in any such suit.” LSA-R.S. 47:2110 (Emphasis ours).
The above statute sets forth the procedure for collecting disputed taxes and recovering illegal taxes in mandatory language which leaves little, if any, discretion to the defendant. Article 3863 of the Louisiana Code of Civil Procedure provides that a writ of mandamus “may be directed to a public officer to compel the performance of a ministerial duty required by law,” and the courts have held this writ does not issue in doubtful cases or, even though it is his duty, when it is not within the power of the defendant to do the act in question.[2]
Plaintiffs have attempted to bring this matter within the purview of Code of Civil Procedure Article 3862, which provides that a writ of mandamus may issue only in cases where the law provides no relief by ordinary means or where the delay involved in obtaining ordinary relief may cause injustice.[3] They attempted to show the delay involved in obtaining ordinary relief would cause injustice. Although there was some testimony regarding public projects being brought to a halt for lack of funds, this testimony was rendered insignificant by admission that some decisions to curtail public improvement projects had been made prior to the assessment and payment under protest procedure now at issue and by the revelation that the amount of tax paid under protest and held by the defendant represents only a fraction of one percent of the budget of the respective recipient agencies. In addition, we note plaintiffs may adjust ad valorem tax millages under Article 7, Section 23 of the 1974 Constitution. We are satisfied Article 3862 of the Code of Civil Procedure does not apply in this case.
In our view, to be successful the plaintiffs must allege and prove the defendant sheriff has, as stated in Code of Civil Procedure Article 3863, “a ministerial duty required by law” to turn over and pay to them the taxes paid under protest. They were unable to carry that burden of proof. In fact, just the opposite is true. The “ministerial duty required by law” of the sheriff is to hold the taxes under the above quoted provisions of Revised Statute 47:2110.
For the reasons assigned, the judgment appealed from is reversed, the writ of mandamus issued herein is recalled and set aside, and plaintiffs’ suit is dismissed.

REVERSED; MANDAMUS SET ASIDE; SUIT DISMISSED.

. The pipeline companies are Southern Natural Gas Company, Texas Eastern Transmission Corporation, United Gas Pipeline Company, . Columbia Gulf Transmission Company, and Tenneco, Inc. (Tennessee Gas Pipeline Company Division). The railroad companies are Missouri Pacific Railroad Company, and Louisiana Southern Railway Company.

. See State v. City of Baton Rouge, 217 La. 857, 47 So.2d 665.

. See also B. of C. of Lafourche v. B. of C. of Atchafalaya, La.App., 340 So.2d 600.