TERRI F. LOVE, Judge.
 

 _jjThe plaintiff sought injunctive relief and a writ of mandamus ordering the City of New Orleans to execute a contract allegedly awarded pursuant to the Louisiana Public Bid Law. The trial court denied all of the plaintiffs demands. We find that the trial court did not abuse its discretion because the Louisiana Public Bid Law did not apply, the plaintiff failed to attend the hearing to adjudicate its status as a responsible bidder, and the remedy of a writ of mandamus was not warranted. Therefore, we affirm.
 

 FACTUAL BACKGROUND AND PROCEDURAL HISTORY
 

 Around October 2009, the City of New Orleans (“City”) solicited bids for the Interim Nuisance Abatement Program (“Project”), Bid Proposal No. 2144-00786, for biological growth, trash, and debris abatement. A.M.E. Disaster Recovery Services, Inc. (“A.M.E.”) submitted a bid proposal for the Project and received a letter from the City on November 17, 2009, stating that it was a successful bidder for districts B and E of the Project. Due to problems surrounding A.M.E.’s completion of its Louis Armstrong Park project, the City sent a letter to A.M.E. on August 4, 2010, as notification that it was no longer deemed a “responsible bidder.” Further, the City withdrew its prior determination of A.M.E. and disqualified it from receiving contracts for the Project. A hearing to refute the 12City’s contentions was scheduled for August 13, 2010.
 

 However, A.M.E. did not participate in the hearing. Instead, A.M.E. filed a verified petition for a temporary restraining order, an application for a preliminary and permanent injunction, and a writ of mandamus against the City. A.M.E. alleged to have submitted the lowest, responsive, and responsible bid and sought to prevent the City from conducting the hearing, making a determination of A.M.E.’s status as a responsible bidder or awarding the contract to another entity. The trial court granted A.M.E. a temporary restraining order on August 13, 2010, which expired on September 8, 2010, as agreed by the parties. The City filed an opposition and alleged that A.M.E.’s action was prema
 
 *456
 
 ture and alleged that A.M.E. had neither a cause of action nor a right of action.
 

 The trial court denied A.M.E.’s application for a preliminary injunction and permanent injunction and also denied its request for a writ of mandamus. A.M.E. subsequently filed an application for supervisory review with this Court. We denied the supervisory writ application because the trial court’s judgment was an appeal-able judgment. A.M.E. then filed a petition for a devolutive appeal, which was granted.
 

 A.M.E. alleges that the trial court erred by finding that the Louisiana Public Bid Law (“LPBL”) did not apply, that A.M.E.’s action was premature even if the LPBL applied, and that the City did not have to award it the contract.
 

 MOTION TO STRIKE
 

 A.M.E. filed a motion to strike the exhibit attached to the City’s brief because the document was not contained in the record. Pursuant to La. C.C.P. art. 2164, we are a court of record and render our decision based on the appellate record before us. Therefore, we grant the motion, as exhibits attached to appellate |abriefs are not considered part of the record for appellate review.
 
 Bd. of Dirs. of Indus. Dev. Bd. of New Orleans v. Taxpayers, Prop. Owners, Citizens of New Orleans,
 
 03-0827, p. 4 (La.App. 4 Cir. 5/29/03), 848 So.2d 733, 737.
 

 STANDARD OF REVIEW
 

 This Court stated:
 

 A public agency awarding a public works contract is vested with the power and discretion to determine the responsibility of the bidder and to reject all bids if none are satisfactory.
 
 J.W. Rombach v. Parish of Jefferson,
 
 95-829, p. 12 (La.App. 5 Cir. 2/14/96), 670 So.2d 1305, 1310 (citing La. R.S. 38:2212). However, the agency’s discretion must be exercised in a fair and legal manner and not arbitrarily.
 
 J.W. Rombach,
 
 95-829, p. 12, 670 So.2d at 1310.
 

 On review of the state agency’s exercise of discretion determining whether a bidder is the lowest responsible bidder, a court should not substitute its judgment for the good faith judgment of an administrative agency.
 
 Id.
 
 at p. 13, 670 So.2d at 1311. The agency’s reasonable good faith interpretation of its own specifications should not be disturbed by a court that may have different views.
 
 Systems Plus, Inc. v. East Jefferson General Hosp.,
 
 94-83, p. 11 (La.App. 5 Cir. 5/31/94), 638 So.2d 404, 409 (quoting
 
 D.M. Clement Contr. v. St. Charles Parish,
 
 524 So.2d 86 (La.App. 5th Cir. 1988));
 
 J.W. Rombach v. Parish of Jefferson,
 
 95-829, p. 13 (La.App. 5 Cir. 2/14/96) 670 So.2d 1305, 1311. The duty of this Court is to determine whether the OPCSO acted in a fair and legal manner and not arbitrarily in disqualifying Lemoine/Brasfield.
 
 J.W. Rombach,
 
 95-829, p. 14, 670 So.2d 1305, 1311;
 
 B.F. Carvin Const. Co., Inc. v. Jefferson Parish Council,
 
 98-1189, p. 12 (La.App. 5 Cir. 5/19/99), 735 So.2d 859, 865.
 

 Lemoine/Brasfield & Gorrie Joint Venture, LLC v. Orleans Parish Criminal Sheriff's Office,
 
 10-1220, pp. 3-4 (La.App. 4 Cir. 3/30/11), 63 So.3d 1068, 1070-71.
 

 14The denial of a preliminary or permanent injunction is an appealable judgment pursuant to La. C.C.P. art. 3612(B). Appellate courts review denials of preliminary injunctions or permanent injunctions utilizing the abuse of discretion standard of review.
 
 Limousine Livery, Ltd. v. A Airport Limousine Serv., L.L.C.,
 
 07-1379, p. 5 (La.App. 4 Cir. 3/12/08), 980 So.2d 780, 783;
 
 FQCPRQ v. Brandon Investments, L.L.C.,
 
 05-0793, p. 7 (La.App. 4 Cir. 3/29/06), 930 So.2d 107, 112;
 
 Sessions,
 
 
 *457
 

 Fishman & Nathan, L.L.P. v. Salas,
 
 04-1790, p. 6 (La.App. 4 Cir. 5/25/05), 905 So.2d 373, 377;
 
 A to Z Paper Co., Inc. v. Carlo Ditta, Inc.,
 
 98-1417, pp. 8-9 (La.App. 4 Cir. 9/9/98), 720 So.2d 703, 708. However, if the trial court’s discretionary decision was based on an erroneous interpretation of law, deference will not be given.
 
 Kem Search, Inc. v. Sheffield,
 
 434 So.2d 1067, 1071-72 (La.1983).
 

 INJUNCTIONS
 

 A.M.E. contends that the LPBL applies to the case
 
 sub judice,
 
 and that even if the LPBL does not apply, its application for injunctive relief was not premature.
 

 “An injunction shall be issued in cases where irreparable injury, loss, or damage may otherwise result to the applicant, or in other cases specifically provided by law.” La. C.C.P. art. 3601(A). A.M.E. was required to establish, by prima facie evidence, that “(1) the injury, loss, or damage it will suffer if the injunction is not issued may be irreparable; (2) it is entitled to the relief sought; and (3) it will likely prevail on the merits of the case.”
 
 Limousine,
 
 07-1379, p. 5, 980 So.2d at 783.
 

 The City’s Home Rule Charter requires the usage of a competitive selection process. Section 6-308(5)(a) provides:
 

 (5) (a) Except in the purchase of unique or noncompetitive articles, competitive bids shall be secured before any purchase, by contract or otherwise, is made or | ¡¡before any contract is awarded for construction, alteration, repair or maintenance or for the rendering of any services to the City, other than professional services, and the purchase shall be made from or the contract shall be awarded to the lowest responsible bidder after advertisement prescribed by ordinance or by applicable state or municipal law.
 

 Therefore, the City must award the contract to the bidder who is responsible and submits the lowest bid.
 

 However, in addition to the City Home Rule Charter, “[t]he Public Bid Law is a salutary provision designed to protect the public fisc from favoritism and exorbitant costs.”
 
 Wallace Stevens, Inc. v. Lafourche Parish Hosp. Dist. No. 3,
 
 323 So.2d 794, 795 (La.1975). “The statute, however, does not apply to every contract of a governmental agency.”
 
 Id.
 
 The LPBL applies to contracts for “public works” and “materials and supplies” when the applicable monetary criteria are met. La. R.S. 38:2211 and La. R.S. 38:2212.1. A “public work” “means the erection, construction, alteration, improvement, or repair of any public facility or immovable property owned, used, or leased by a public entity.”
 
 [1]
 
 La. R.S. 38:2211(12).
 

 The trial court stated that the contract for the Project, by consisting of grass cutting and debris removal services, was a “service contract,” thereby making the LPBL inapplicable. The trial court further stated:
 

 The INAP Project involved a program to assist the City in cleaning and remedying blighted property and did not involve the erection, construction, alteration, improvement, or repair of public property. Thus, the City did not have to follow the deadlines provided under the LPWA in awarding the contract to the lowest responsible bidder.
 

 |/We agree. The award letter A.M.E. received regarded “Biological Growth and Trash and Debris Abatement.” Attach-
 
 *458
 
 merit “A” to the Invitation to Bid also provided that: “[t]his specification will produce a non-exclusive requirements’ contract,” which would not require “the City to issue or maintain any assignments hereunder.” Like the trial court, we do not find that this type of debris removal contract falls under the purview of the LPBL, as we do not find that it regards the erection, construction, alteration, improvement, operation, or repair of public property or immovable property. Accordingly, LPBL did not mandate that the City execute a contract with A.M.E. within forty-five days from the award letter.
 
 [2]
 

 Even if the Project constituted public works, the trial court found that:
 

 La. R.S. 38:2212(J) provides for an administrative process for disqualifications of a bidder on the grounds that the bidder is not a “responsible bidder” where the agency must: 1) Give written notice of the proposed disqualification to such bidder and include in the written notice all reasons for the proposed disqualification; and 2) Give such bidder, who is proposed to be disqualified the opportunity to be heard at an informal hearing at which such bidder is afforded the opportunity to refute the reasons for the disqualification. Here the City complied with the requirements for a due process hearing in its letter of disqualify cation, for which A.M.E. declined to participate. In this regard, the court concludes this matter would be premature in light of the administrative process established pursuant to LA. R.S. 38:2212(j) and adopted by the City for the proposed disqualification hearing of A.M.E.
 

 17(Citation omitted).
 

 Again, we agree. The City scheduled a hearing for A.M.E. to refute the evidence that it was no longer a responsible bidder. However, A.M.E. chose not to attend the hearing and defend its status. During the hearing on the preliminary injunction, A.M.E. stated its reasons for not attending the City’s hearing to determine its responsibility as follows:
 

 [T]he reason we didn’t go is because disqualification hearings are given great latitude in appellate review. We don’t get two bites at the apple. The City is judging themselves against my client’s
 
 *459
 
 responsibility, and then the Appellate Courts have to give that deference. We’re not going to get our fair day in court. It’s not going to be due process.
 

 “[T]he public entity contracting the work” is vested “with wide discretion to determine bidder responsibility.”
 
 Broadmoor, L.L.C. v. Ernest N. Morial New Orleans Exhibition Hall Auth.,
 
 04-0211; 04-0212, p. 7 (La.3/18/04), 867 So.2d 651, 656. To determine responsibility, the public entity can examine “financial ability, skill, integrity, business judgment, experience, reputation, quality of previous work on contracts, and other similar factors bearing on the bidder’s ability to successfully perform the contract.”
 
 Id.
 

 Given the problems surrounding A.M.E.’s completion of its Louis Armstrong Park project, we do not find that the City’s actions were unfair or arbitrary. The City offered A.M.E. an opportunity to refute its new status as an irresponsible bidder, which A.M.E. declined because it did not believe the hearing and subsequent appellate review would be fair. Therefore, A.M.E. chose not to exhaust administrative remedies. Accordingly, we do not find that the trial court abused its discretion in denying A.M.E. request for injunctive relief because it failed to show that it was entitled to the relief sought.
 

 \ ¡MANDAMUS
 

 A.M.E. alleges that the City has a mandatory duty to execute a contract for the Project because the LPBL applies.
 

 “A writ of mandamus may be directed to a public officer to compel the performance of a ministerial duty required by law ... to compel the delivery of the papers and effects of the office to his successor.” La. C.C.P. art. 3863. A writ of mandamus is “an extraordinary remedy, to be applied where ordinary means fail to afford adequate relief.”
 
 Hoag v. State,
 
 04-0857, p. 6 (La.12/01/04), 889 So.2d 1019, 1023. The remedy “must be used sparingly ... to compel action that is clearly provided by law.”
 
 Hamp’s Const., L.L.C. v. Hous. Auth. of New Orleans,
 
 10-0816, pp. 3-4 (La.App. 4 Cir. 12/01/10), 52 So.3d 970, 973, quoting
 
 Allen v. St. Tammany Parish Police Jury,
 
 96-0938, p. 4 (La.App. 1 Cir. 2/14/97), 690 So.2d 150, 153. “Mandamus will not lie in matters in which discretion and evaluation of evidence must be exercised.”
 
 Hamp’s,
 
 10-0816, p. 4, 52 So.3d at 973. “The remedy is not available to command the performance of an act that contains any element of discretion, however slight.”
 
 Id.
 

 As to the writ of mandamus, the trial court found that because the Project did not concern a public work, the City was not mandated to comply with the LPBL. Further, the trial court stated:
 

 The issues raised herein concern matters, albeit contested ones, in which discretion and evaluation of evidence must be exercised. This case presents a res nova issue for the court’s consideration,
 
 ie.,
 
 an agency’s exercise of its discretion to determine bidder responsibility after notifying bidder of the awarding of a services contract, but prior to the execution of the contract. While case law establishes that the public entity does not have the discretion to determine, after bids have been submitted, whether a requirement is substantive or non-substantive, waivable or non-waivable, there is no similar prohibition or limitation on the public agency’s exercise of its duty to | ^determine bidder responsibility and whether that discretion ends with the notification of contract award or whether it extends to execution of contract. Under the provisions of the Public Bid Law, a public entity is required to award a public contract to the “lowest responsible bidder”; however, this does not
 
 *460
 
 mean that the public entity is required to accept the lowest monetary bid. Nor does this court believe the law requires the public entity to ignore evidence of bidder irresponsibility.
 

 (Citations omitted). Finally, the trial court found that:
 

 Based upon the uncontroverted evidence submitted by the City Attorney, the Court finds that the City acted reasonably in determining bidder responsibility of A.M.E. and issuing the disqualification letter. There is but little dissent from the general rule that, in determining who is such ‘lowest responsible bidder,’ or ‘lowest and best bidder,’ public boards and officials are vested with wide discretion. Their decision, when based upon an honest exercise of the discretion thus vested in them, will not be interfered with by the courts, unless apparently arbitrary or capricious.
 

 We agree. Considering our finding that the trial court did not abuse its discretion by denying A.M.E. injunctive relief, we also find that a writ of mandamus was not warranted due to the discretion afforded the City in non-LPBL cases. Even if the LPBL applied, the record before us presents evidence to support a finding of just cause on which to base A.M.E.’s disqualification letter. Therefore, we find that the trial court did not abuse its discretion by denying A.M.E. a writ of mandamus and affirm.
 

 DECREE
 

 For the above mentioned reasons, we find that the trial court did not abuse its discretion by denying A.M.E. injunctive relief and refusing to issue a writ of mandamus. Therefore, we affirm.
 

 AFFIRMED
 

 [1]
 

 . The statute was amended on June 24, 2011, to add "operation” to the definition of a public work.
 

 [2]
 

 . La. R.S. 38:2215 Time period for holding bids; issuance of work orders to commence work; exceptions
 

 A. The state or any state agency upon receipt of bids for the undertaking of any public works contract shall act within thirty calendar days of such receipt to award said contract to the lowest responsible bidder or reject all bids. A political subdivision upon receipt of bids for the undertaking of any public works contract shall act within forty-five calendar days of such receipt to award said contract to the lowest responsible bidder or reject all bids. However, the public entity and the lowest responsible bidder, by mutually written consent, may agree to extend the deadline for award by one or more extensions of thirty calendar days.
 

 B. The provisions of this Section shall not be applicable when the contract is to be financed by bonds which are required to be sold after receipt of bids on the contract, or when the contract is to be financed in whole or in part by federal or other funds which will not be readily available at the time bids are received, or on contracts which require a poll of the legislature of Louisiana before funds are available to fund the contract. In the event the time limit stipulated herein is not applicable because of one of the exceptions outlined above, this fact shall be mentioned in the specifications for the project and in the official advertisement for bids required in accordance with R.S. 38:2212.
 

 C. Upon the execution of the contract, the public entity, within thirty days thereafter, shall issue to the contractor a notice to proceed with the project. However, upon mutual consent by both parties, the notice to proceed may be extended.
 

 D. These provisions shall not be subject to waiver.