**HENRY CONSULTING, LLC**

**VERSUS**

**THE NEW ORLEANS CITY COUNCIL**

\*     **NO. 2025-CA-0171**

\*     **COURT OF APPEAL**

\*     **FOURTH CIRCUIT**

\*     **STATE OF LOUISIANA**

\* \* \* \* \* \* \*

CONSOLIDATED WITH:

RAMELLI JANITORIAL SERVICES, INC.

VERSUS

CITY OF NEW ORLEANS, HENRY CONSULTING, LLC., THE COUNCIL OF THE CITY OF NEW ORLEANS

CONSOLIDATED WITH:

NO. 2025-CA-0172

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2024-11139, DIVISION "M"
Honorable Paulette R. Irons
\* \* \* \* \* \*
**Judge Monique G. Morial**
\* \* \* \* \* \*

(Court composed of Judge Joy Cossich Lobrano, Judge Sandra Cabrina Jenkins, Judge Monique G. Morial)

**LOBRANO, J., CONCURS WITH REASONS**
**JENKINS, J., CONCURS IN RESULT AND ASSIGNS REASONS**

Kim M. Boyle
Allen C. Miller, Sr.
Jesse C. Stewart
Mark D. Ackal
PHELPS DUNBAR LLP
365 Canal Street
Suite 2000
New Orleans, LA 70130-6534

COUNSEL FOR PLAINTIFF/APPELLEE

Judy Y. Barrasso
Shaun P. McFall
Aaron M. Steeg
BARRASSO USDIN KUPPERMAN FREEMAN & SARVER, LLC
909 Poydras Street, Suite 2350
New Orleans, LA 70112

Adam J. Swensek
CITY ATTORNEY'S OFFICE
1300 Perdido Street
Room 5E03
New Orleans, LA 70112

  COUNSEL FOR DEFENDANT/APPELLANT

**REVERSED**
**AUGUST 15, 2025**

Appellants, the New Orleans City Council and its individual members, appeal the district court's December 16, 2024 judgment granting mandamus relief, ordering the Council to make a motion to vote and authorize the Council President's signature to a city contract between the City of New Orleans and Appellee, Henry Consulting, L.L.C. For the following reasons, we reverse the district court's judgment.

*MGM*

**Factual and Procedural History**

On December 9, 2024, Henry Consulting, L.L.C. ("Henry") filed a "Petition for Writ of Mandamus" against the New Orleans City Council and its individual members[1] (collectively "the Council"), contending that the Council improperly refused to authorize the Council President's signature to a professional services agreement ("PSA") between the City of New Orleans and Henry. The petition alleged that the City of New Orleans issued a Request for Proposals ("RFP") on May 7, 2024, for "Service Area 5 French Quarter and Downtown Development

---

[1] The petition named individual Council members Helena Moreno, Jean-Paul Morrell, Lesli Harris, Freddie King, III, Joseph Giarrusso, Eugene Green, and Oliver Thomas in their official capacities only.

1

District ("DDD") Sanitation Services" and that Henry submitted its response to the RFP, including a technical proposal and a price proposal, on June 21, 2024. The PSA between the City of New Orleans and Henry for services was approved and executed by the Mayor of New Orleans on December 9, 2024. Helena Moreno, the then Council President, however, did not execute or sign the designated signature space to authorize the PSA between the City of New Orleans and Henry.

In its petition, Henry alleged that the Council's refusal to authorize and the Council President's refusal to sign the PSA is in violation of the New Orleans Home Rule Charter ("HRC") and the Code of the City of New Orleans, specifically Chapter 70, Article I, Section 70-10 ("the Ordinance"). Henry contended that the HRC and the Ordinance at issue require that the Council move to authorize the Council President to sign any contract or PSA previously approved and executed by the Mayor. Henry asserted that the Council's motion and the Council President's signature are mandatory and ministerial duties required by the HRC and the Ordinance. Henry alleged that the Council has "failed to perform the purely administerial function of calling a motion to authorize the Council President to sign the Henry PSA." Henry alleged that the "Council's failure to call a motion, and the Council President's failure to sign the Henry PSA is arbitrary, capricious, an abuse of discretion, and a direct threat to the health and safety of the citizens of New Orleans… ."[2] Henry sought mandamus relief, asking the trial court to compel "the City Council, through its President, to sign the Henry PSA."[3]

_____

[2] Henry alleged that the Council refused to authorize the Council President's signature on the PSA in light of Henry's subcontractor modification request, in which Henry sought to replace the

The district court conducted a hearing on December 16, 2024. At the conclusion of the hearing, the district court granted the petition for mandamus. The district judge found that the Ordinance requires the Council to make a motion to authorize the Council President to sign any city contract executed and presented by the Mayor. The district judge found that the language of the Ordinance provides simple ministerial actions required by the Council and Council President and subsequently granted mandamus relief, issuing "a writ against the City Council and its members directing the Council to vote and the Council President to sign the Henry public service contract." This timely appeal followed.

## Law and Analysis

"A writ of mandamus may be directed to a public officer to compel the performance of a ministerial duty required by law... ." La. C.C.P. art. 3863. A ministerial duty is a simple, definite duty, arising under conditions admitted or proved to exist, and imposed by law. *Hoag v. State*, 04-0857, p. 7 (La. 12/1/04), 889 So.2d 1019, 1024 (quotations omitted). Ministerial duties are duties in which no element of discretion is left to the public officer. *Id*.

This Court has recently stated:

'A writ of mandamus is an extraordinary remedy, to be applied where ordinary means fail to afford adequate relief.' *Hoag v. State,* 04-0857, p. 6 (La. 12/01/04), 889 So.2d 1019, 1023. The remedy 'must be used sparingly ... to compel action that is clearly provided by law.' *Hamp's*

original contractor, Richard's Disposal, Inc. ("RDI") with another subcontractor, Clean Force. On November 14, 2024, RDI filed suit against Henry, alleging that RDI and Henry had reached an agreement for RDI to act as subcontractor for the PSA contract at issue with the City and seeking injunctive relief prohibiting Henry from contracting with any other subcontractor for the PSA. Subsequently, RDI's suit for injunctive relief was consolidated with the instant case at the district court level. The injunctive suit is not before this Court at this time.

[3] In its petition, Henry acknowledges that "[t]his is a mandamus action only, and does not challenge the underlying legality of the Ordinance."

3

*Const., L.L.C. v. Hous. Auth. of New Orleans,* 10–0816, pp. 3-4 (La. App. 4 Cir. 12/01/10), 52 So.3d 970, 973, quoting *Allen v. St. Tammany Parish Police Jury,* 96–0938, p. 4 (La. App. 1 Cir. 2/14/97), 690 So.2d 150, 153. 'Mandamus will not lie in matters in which discretion and evaluation of evidence must be exercised.' *Hamp's,* 10-0816, p. 4, 52 So.3d at 973. 'The remedy is not available to command the performance of an act that contains any element of discretion, however slight.' *Id.*

*Humane Soc'y of New Orleans v. Landrieu*, 13-1059, p. 3 (La. App. 4 Cir. 2/26/14), 135 So.3d 1195, 1197 (quoting *A.M.E. Disaster Recovery Servs., Inc. v. City of New Orleans*, 10-1755, p. 8 (La. App. 4 Cir. 8/24/11), 72 So.3d 454, 459).

Thus, mandamus relief is an extraordinary remedy and is not available to command performance of an act that contains any element of discretion, however slight. *Id*. A writ of mandamus is never granted in doubtful cases. *State ex rel. Hutton v. City of Baton Rouge*, 217 La. 857, 869, 47 So.2d 665, 669 (1950); *Russell v. Morrell*, 11-1635, p. 2 (La. App. 4 Cir. 5/2/12), 91 So.3d 533, 534. "Generally, an appellate court reviews a trial court's judgment on a writ of mandamus under an abuse of discretion standard." *Commodore v. City of New Orleans*, 19-0127, p. 9 (La. App. 4 Cir. 6/20/19), 275 So.3d 457, 465. "However, questions of law, such as the proper interpretation of a statute, are reviewed by appellate courts under the *de novo* standard of review… ." *Id*; see also *Cooley v. Williams*, 22-0564, p. 3 (La. App. 4 Cir. 1/30/23), 358 So.3d 127, 129.

The sole issue presented in this appeal is whether Appellant Henry is entitled to mandamus relief under the facts of this case. The parties do not contest the validity of the Ordinance in this litigation and, nevertheless, "a mandamus proceeding is not a proper proceeding for a relator to attack the validity of a statute." *State ex rel. Hutton*, 47 So.2d at 668.

Our analysis requires review and interpretation of the Ordinance to determine whether there is discretion, however slight, as to whether the Council is

*required* to make a motion to authorize the Council President to sign contracts executed by the Mayor. The Louisiana Supreme Court has stated the following general principles concerning interpretation of statutory language:

> The starting point in the interpretation of any statute is the language of the statute itself. *Id*. Thus, "[w]hen a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." La. C.C. art. 9; La. R.S. 1:4. However, "[w]hen the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law." La. C.C. art. 10. Moreover, "[w]hen the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole." La. C.C. art. 12.

*Carollo v. Dep't of Transp. & Dev.*, 21-01670, pp. 12-13 (La. 9/1/22), 346 So.3d 751, 759-60.

The Ordinance at issue in this litigation, in pertinent part, provides:

**Sec. 70-10. - Execution by council president.**

(a) The following contracts must be signed by the president of the city council, in addition to the signatories required by <u>section 6-308</u> of the Home Rule Charter:

(1) Any contract providing for the aggregate expenditure of more than $1,000,000.00 in city funds during the initial term and all allowable renewal terms or having an initial term of more than one year; and
(2) Any professional services agreement providing for legal representation on behalf of the city, including any city department, board, or officer, together with any amendment or extension thereof.

(b) The president of the city council shall not execute any agreement pursuant to this section unless authorized to do so by council motion.

Henry points to the Ordinance language in subsection (a) directing that contracts "must be signed by the president of the city council," and argues that such language sets forth a ministerial and mandatory action or function of the Council President—instructing that the Council President *must* sign contracts

presented. The Council, on the other hand, points to the similarly mandatory language in subsection (b) providing that the Council President "*shall not* execute any agreement…*unless* authorized to do so by council motion." (emphasis added). The Council argues that the Council President is not authorized to sign any contract *unless* the Council has made a motion to authorize the Council President to do so.

The fundamental question in all cases of statutory interpretation is legislative intent. *Carollo*, 21-01670, p. 12, 346 So.3d at 759 (quotations omitted). The Ordinance at issue was initially ordained as Section 70-10 of the Code of the City of New Orleans on November 27, 2022. The preamble language considered by the Council in connection with the passing of the Ordinance provided the following context for the amendment of the Code of the City of New Orleans:

> **AN ORDINANCE** to ordain Section 70-10 of the Code of the City of New Orleans *relative to the approval and execution* of City of New Orleans contracts valued at more than one million dollars ($1,000,000) or having a term of more than one (1) year by the City Council; and otherwise to provide with respect thereto.
>
> **WHEREAS,** Section 6-308 of the Home Rule Charter provides: "[t]he Council may by ordinance provide for the manner of executing other contracts and may in the case of any contract require the signatures of other officers in addition to those specified in this Section as it may deem proper for the protection of the interests of the City;" and
>
> **WHEREAS,** it is in the public interest to ensure community awareness of and engagement on matters pertaining to significant taxpayer expense; and
>
> **WHEREAS,** the City Council serves as the representative body of the citizens of the City of New Orleans and desires to consider public input prior to the expenditure of taxpayer dollars; **NOW THEREFORE**

**SECTION 1. THE COUNCIL OF THE CITY OF NEW ORLEANS HEREBY ORDAINS,** That the Code of the City of New Orleans, Louisiana, is hereby amended by adding a section to be numbered as section 70-10…

NEW ORLEANS, LA., CODE of ORDINANCES, ch. 70, art. I § 70-10 (M.C.S. Ord. No. 29258, § 1, eff. 11-27-2022)(Preamble)(emphasis added).

The preamble language demonstrates that the Ordinance at issue was considered and drafted "relative to the approval and execution" of certain city contracts. The preamble language also references HRC Section 6-308, which provides authority for the Council to pass ordinances relative to city contracts in an effort to protect the interests of the City of New Orleans.[4] Reading the preamble language preceding the enactment of Section 70-10 in conjunction with the language in the Ordinance itself, we find that such language supports a finding that the Council's intent or purpose, relying on Section 6-308 of the HRC, was to place restrictions or additional requirements on certain city contracts in excess of $1,000,000.00 or with a term exceeding one year in an effort to protect the interests of the City of New Orleans.

Considering the plain language of Section 70-10, which provides that the Council President "shall not" sign such contracts "unless authorized to do so by Council motion," we find that the Council President's signature is not a ministerial and mandatory duty clearly provided for by law. Rather, the language in subsection (b) of the Ordinance itself directs that the Council President shall *not* sign such contracts *unless* the Council authorizes him or her to do so. Therefore, the Council President's duty to sign city contracts is not definite and ministerial unless

---

[4] The New Orleans Home Rule Charter, Article VI, Section 6-308(7) provides:

The Council may by ordinance provide for the manner of executing other contracts and may in the case of any contract require the signatures of other officers in addition to those specified in this Section as it may deem proper for the protection of the interests of the City.

authorized by Council motion and, thus, is not appropriate to compel by a writ of mandamus in this case.

Turning to whether the Council has a duty to make a motion to authorize the Council President's signature, the Ordinance does not contain any mandatory language clearly directing the Council to make such a motion. Mandamus relief is an extraordinary remedy and is only awarded when appropriate to "compel the performance of a ministerial duty *required* by law." La. C.C.P. art. 3863 (emphasis added). If there is any doubt that the performance sought to be commanded is clearly provided for by law, mandamus relief cannot lie. *Humane Soc'y of New Orleans*, 13-1059, p. 3, 135 So.3d at 1197. Because the Ordinance appears to grant discretion to the Council as to whether to make a motion to authorize the Council President's signature on certain city contracts, or at least presents doubt as to whether such action is required, we find mandamus relief is not proper in this case.

**Decree**

Accordingly, we reverse the district court's December 16, 2024 judgment granting mandamus relief, and dismiss Henry's petition for mandamus.

**REVERSED**